Mr. Justice Stoky
 

 delivered the ppinion of the Court.
 

 ' This cause comes before ué, upon a writ of error to the Circuit Court of the District of Kentucky. The original action was brought by the plaintiffs in error, against the defendants, on the 16th of August 1820; to recover the value of certain iron castings, sold- and delivered to them by the plaintiff. The' defendants pleaded
 
 non assumpserunt,
 
 and
 
 non assumpserunt,
 
 within five years; (the latter being the time prescribed by the Kentucky statute of limitations, in cases' of this nature;) upon which, pleas, the parties were at issue.; and at the trial, a verdict was returned by the jury for the defendants; .upon which, judgment passed in their favour. ’ A,bill of exceptions was taken to certain points, ruled by the Circuit Court at the trial"; and the validity of these exceptions, has constituted the ground of the argument for the reversal, which has been insisted on in this Court.
 

 The first objection urged, is the exclusion of the deposition of a Mr..Mockbee, which was offered by the plaintiff as testimony in the cause. The reason assigned for the exclusion, is, that there was no proof by the certificate of the magistrate, or otherwise, that the deposition was reduced to writing, in the presence of the magistrate. This .is. a point altogether depend-ant upon the.construction of the Act of (jongress of-the 4th of September 1789, ch. 20; under the authority of which the deposition purports to be taken. The authority' to take testimony in this manner, being in derogation of the rules of the common law,- has always been construed strictly; and, therefore, it is necessary to establish, that all the requisites of the law have been complied with, before such testimoñy is admissible'.The Act of Congress provides, “That every person deposing as aforesaid, shall be carefully examined and cautioned, and sworn or affirmed, to testify the whole truth, and shall suh-
 
 *356
 
 scribe the testimony by him or her given, after tlie same shall bé reduced to writing; which shall be done only by the magistrate, taking the deposition,
 
 or by the deponent in his presence.'
 
 And the deposition, so taken, shall be retained by such magis--trate, until he deliver the same with his own hand into the Court for which they are taken; or shall, together with a certificate of the reasons as aforesaid of their being taken, and of the notice, if any was given to the adverse party, be by him the said magistrate,-sealed up, and directed'to such Court; and-remain under his seal, until opened in Court.”
 

 Without doubt,.the certificate of the magistrate is good evidence of the facts stated therein, so as to entitle the deposition to be read to the jury; if all the necessary facts are there sufficiently disclosed. It is nof denied, that the reducing of the deposition to writing, in'the presence of. (he magistrate, isa fact made material by the statute, and that proof of it, is' a necessary preliminary to the right of introducing it at the trial. But it is supposed that sufficient may be gathered by intendment from the certificate of the magistrate, to justify the presumption that it was done. The certifica e is in these words’: “ State of Tennessee, Dickson County, ss. At Charlotte, in said County, on the fourth day.of July'1822, before me, James M. Ross, Justice of the peace, and one of the Judges of the County Court of Dickson County; came, personally, John Mockbee, being about the age of fifty-one years, and after being carefully examined and cautioned, and sworn,, to testify the whole truth, did subscribe the foregoing and annexed deposition, after the same was reduced to writing, by him in his owrn proper hand.” The certificate then proceeds to state the- reason for taking the deposition, &c. in the usual forml It is remarkable that the certificate follows -throughout, with great exactness of terms, every requisition in the statute, with the exception as to the deposition being reduced to writing in the presence of the magistrate; and it is scarcely presumable, that this was accidentally omitted. At all events, every word in the certificate may be perfectly true, and yet, the deposition may not have- been reduced to writing in the magistrate’s presence. If this be so, then'there can arise no just presumption in favour of it. And we think,- in a case of this nature; where evidence is sought to be admitted, contrary to the rules of the common law; something more than a mere presumption, should exist that it was rightly taken. There ought to be direct proof, that the requisitions of the statute have been fully complied with. We are therefore of opinion that the deposition was properly rejected.
 

 .. The more important question in the cause, is .that relative fo the evidence introduced to repel the plea of the statute of
 
 *357
 
 limitations. In the course of the trial, the plaintiff read to tíre jury certain articles of copartnership, made between the defendants in March 1810; whereby the'defendants entered into á joint trade and partnership, in the manufacturing of salt; at a place known by the- name of the United States’ Saline, near the Wabash River within the Illinois Territory, for the term of three years, then next ensuing, under the style of Taylor, Wilkins & Co. He also gave evidence, that large quantities of iron castings had been sold and delivered by him to the company, during the term of the copartnership. He then introduced the testimony of one Patterson Baine, who stated, “ that some time in the year 1818, .or 1819, the pláintiff, Bell, came-to his house, in Lexington, and stated, that he had .again' come up, - to endeavour to get the amount of his account from the defendants. He requested the witness to go with the plaintiff to Col. Morrison’s, (one of the defendants,) on that business.. The witness went. The plaintiff and Morrison had a good deal of conversation,.on the subject of the plaintiff’s account against the Saline Company for metal furnished, which is not recollected by the witness. The witness recollects, that Morrison stated, that the books and papers relative,to the plaintiff’s claim were in the hands, of Jonathan Taylor, (one of the defendants,) which put it out of his power to settle the account at that time, and expressed a willingness, but for that reason, to'settle with the plaintiff. The plaintiff bade him good bye, and declared that that was the last time he Should ever apply for a settlement of his account. The. plain tiff then left the house of Morrison, arid returned with the witness to his house, where he remained ■until after breakfast on the next day; — that shortly after.breakfast, Morrison came to the house of- the'witness, and said to Bell, (the plaintiff,) that he was very anxious, that his, (the p'laiin-' tiff’s) account, should be settled; adding, “ I know we are qwing you, and I am anxious it should be settled.” He then mentioned to the plaintiff, that he, (Morrison,) was getting old, and did not like to have such things hanging over him, and wished to have the business settled, and to have done with it. He then proposed to give the plaintiff seven thousand dollars, and close the business. The plaintiff refused to. take it, and; they parted; — that no account, or papers of any kind, were shown or produced by Bell, at the time of these Conversations-with Morrison; but he understood the conversations to relate to- the claim for castings, furnished by him to the pompany of Taylor, Wilkins and others. The witness observed to the plaintiff, after Morrison’s departure, that he should have taken Morrison’s offer; that “ a half loaf was better than no ' ead.” The plaintiff also introduced certain letters written by Morrison and Butler, (two of the defendants,) (o him. The first was
 
 *358
 
 a letter from Morrison, dated 2d of October 1814; and it contains, among others, the following expressions: — “I wish whatever is due to you should be paid; — I have once more to ask you to follow the advicé I am about to offer, viz: to come up here, without delay, (as Col. Butler may be soon ordered off,) and I cannot believe your present suit will answer any purpose,” &c. &c.
 
 ¿
 
 44 It is not our wish to keep from you, whatever may be your just due. We have sent for the company books,' some two or three weeks since; they will come to Louisville by water; and on your and Mr. Wheatley’s being there, I have no doubt but your account can be adjusted; and that, more to your satisfaction, than it ever can. be from the result of your suit,” &c. “I wish your account settled; and, I have no .hesitation in saying, on your coming here, it will'be done.” The next was a letter from Butler, dated 26th October 1817, in which he informs the plaintiff, that, on the 20th of November, Messrs. Morrison and Wilkins will be. at Hopkinsville, “for the purpose of adjusting some of the affairs of the.old Saline Company,” &c.; and desires that he “ will be present, in order that a settlement may be effected, if possible, of the account which you, (he,) set up against' the company.” The next is from. Butler,-4ated the 8th of November 1817, again mentioning the in tended meeting on the 20th of November,44 for the purpose of adjusting our old account with you;” and he adds, “I hope, therefore, you will be at Hopkinsville,, for. the purpose of enabling, us to settle this old affair, to which, I am-sure, all must be most anxious.” The next is from Butler, dated 2Sd. of October 1.818, in which he alludes to a complaint made b.y the plaintiff, of Butler’s absence from home on the 5th of the same month, when the plaintiff called'there, and reminds the plaintiff of a conversation they had at ihef Green-ville Springs, 44 abput a day of meeting to adjust the account between the former Saline Company and yourself,” and- excuses himself for- his absence. He adds, 441 have now, Sir, attended at three places, upon three appointments made by yourself and myself, without being able to have a meeting, &c. If it would 'suit you to be at Frankfort, during the sitting of the legislature, we might possibly come to some understanding on the subject.” The next is a letter from Jonathan Taylor, (olre of the defendants,) to the plaintiff, dated 13th March 1818, in which he says, 4<I received.a letter last Monday from Col. Butler, inviting me to attend an appointment with you at Hopkinsr ville, on the 26th of this month, for the. purpose of adjusting the old company account. I shall endeavour to attend at that time, when, if we can make an arrangement, equally mutual, for the metal I may
 
 hereafter
 
 want,"it can be done.”' Other letters
 
 *359
 
 of Taylor were read in evidence, but they all bear date in the years 1811, and 1812.
 

 It was further proved, that the plaintiff was present in 1814, when the Saline and improvements were delivered over to Bates, the succeeding lessee; and that the plaintiff was then apprized, that the term of the defendants, as lessees, had terminated. After the evidence on the part .of the plaintiff was closed, the defendants’ counsel moved the Court to exclude the testimony of Patterson Baine, and all the letters bearing date within five years before the bringing of this suit, offered by the plaintiff, to show- a promise on the part of the defendants, or any one of them, or any member of said firm or partnership, within five years next before the commencement of this suit; and the Court so excluded from the jury the evidence of the said Bane, and all the letters dated, within five years aforesaid, tending to prove a promise in five years, next before the commencement of this suit, by the defendants, or either of them, or any member of' said firm or partnership, as prayed by the defendants’ counsel; and decided, that “ there was no sufficient evidence or admissions by the defendants, of either of them, or any member of said firm or partnership, to prove such a promise, in five years before the commencement of this suit, as would take the case out of the statute of limitations, or should be left to the jury, as conducing to that effect.” To which opinion of the Court the plaintiff filed his bill of-exceptions ; and the correctness of this -opinion has constituted the main ground of the elaborate argument at this bar.
 

 Two points are necessarily involved in the discussion of this opinion. The first is, whether the evidence so excluded, (supposing it to be, in all other respects, unobjectionable,) was competent, in point, of law, to have been left to the jury to infer a promise sufficient to take the case out of the statute of limitations. The second is, whether, supposing it would be competent, in ordinary cases, the fact that it was the acknowledgment or promise of one partner, after the dissolution of the partnership, did not justify its exclusion, as incompetent evidence to bind the other partners.
 

 The statute of limitations of Kentucky, is substantially the same with the statute of 21 of James, ch. 16, with the exception, that it substitutes the term of five years instead of six. The English decisions have, therefore, been resorted to, upon the present occasion, as illustrative of the true construction of the statute, and, in this view, are doubtless entitled to great consideration. They are not,, however, and cannot be consi-, dered as conclusive authority, upon the construction of the statute passed by a state, upon the like subject; for this justly belongs to the local state tribunals, whose rules of- interpreta
 
 *360
 
 tion must be presumed'to be founded upon a more just-and accurate view of their own jurisprudence, than those of any foreign tribunal, however respectable. If, therefore upon exa-minátion it shall be found, that the doctrine?] of the Kentucky Courts, upon this subject, are irreconcilable with those deduc-. ed from the statute of James, this Court would, in conformity with its general practice, follow the local law, and administer the same justice which the state Court would administer between the same parties.
 

 It has often been matter of regret, in modern times, that, in the construction of the statute of limitations, the decisions had not proceeded upon principles better adapted to carry into effect the real objects of the statute; that, instead of being viewed-in an unfavourable light, as an unjust and discreditable de-fence, it had received suc-h support, as would have made it, what it was intended to be, emphatically, a statute of repose.It is a wise and beneficial law, not designed merely to raise a presumption of payment óf a just debt,- from lapse of time, but to afford security against stale demands, after the true state of-the transaction may have been forgotten, or be incapable of explanation, by reason of the death on removal of witnesses. It has a manifest tendency to produce speedy settlements of accounts, and to suppress those prejudices which may rise up at a distance of time, and baffle every honest effort, to counteract or overcome them. Parol evidence may be offered.of confessions, (a species of evidence which, it has been often observed, it is hard to disprove, and easy to fabricate,) applicable to.such remote, times, as may leave no means to trace the nature, extent, or origin of the claim, and thus, open the way to the most, oppressive -charges. If we proceed one step further, and admit that loose and general expressions,, from which a probable or possible inference may be deduced- of- the acknowledgment of a debt,, by a Court or jury; that, as the language of some cases has been, any acknowledgment, however slight, or any statement not amounting to a denial of'the debt; that any admission of the .existence of an unsettled account, without any specification of amount or balance, arid however indeterminate and casual, are yet sufficient, to take the case out of the statute of. limitations, and to let in evidence,
 
 gliunde, to
 
 establish any debt, however large, and at whatever.distance of time; it is easy to perceive, that the wholesome Objects of the ■statute, 'must-be, in a great measure, defective; and the statute, virtually repealed.
 

 The English decisions upon this subject, have gone great lengths- — greater, indeed, in our judgment, than any sound interpretation of the statute will warrant; and, in some instances, to an.extent which is irreconcilable with any just princi-
 
 *361
 
 píe. There appears, at present, a disposition on the part of the English Courts to retrace their steps; and, as far as they may, .to bring back the doctrine to sober and rational limits. The American Courts have evinced a like disposition. In the recent case of Bangs
 
 vs.
 
 Hall, 2
 
 Picker. Rep.
 
 368, the principal cases were reviewed by the Supreme Court of Massachusetts; and it was held, that to take a case out of the statute,' there must be an unqualified acknowledgment, not only of the-debt as originally due, but that it continues so; and if there has been a conditional promise, that the condition has been performed < — a doctrine, quite as comprehensive, has been asserted in the Supreme Court of New-York. The subject was much considered in the case of Sands
 
 vs.
 
 Gelston, 15
 
 Johns. Rep.
 
 511, where Mr. Chief .Justice Spencer, in delivering the opinion of the Court, said, “that if at the time of the acknowledgment 'of the existence of the debt, such acknowledgment is qualified in a way to repel the presumption of a promise to pay, it will not be evidence of a promise sufficient to revive the debt, and take it out'of the statute.” In consonance with this principle, the same Court has held, that “if the acknowledgment be accompanied with a declaration that the party intends to rely on the statute as a defence, such an acknowledgment is wholly insufficient.”
 
 *
 
 In the case of Clementson
 
 vs.
 
 Williams, 8
 
 Cranch, 72,
 
 this Court expressed the opinion that the decisions on this subject had gone full as far as they ought to be carried, and that the Court was not inclined to extend them; that the statute of limitations was entitled to the same respect with other statutes, and ought not to be explained away. In that case, an attempt was made to charge a partnership, by an acknowledgment made after its dissolution, by one of the partners, .when an account was presented to him, that “ the account was due, and he supposed it had been paid by the other partner, but he had not paid it himself, and did not know of its. being ever paid.” It was held, that this was not a sufficient acknowledgment to take the case out of the .statute. The Chief Justice,' in delivering the opinion of the Court, said, “ in this case there is no promise, conditional or unconditional, but a simple acknowledgment. This acknowledgment goes to the original justice of the account. But this is'not enough. The statute of limitations was not enacted to protect persons from claims fictitious in their origin, but from ancient claims, whether well or ill founded, which may have been discharged, but the evidence of discharge may be lost. It is not sufficient to take the case out of the Act, that the claim should be proved, or be ac
 
 *362
 
 knowledged to have been originally just; the acknowledgment must go to the' fact, that it is still due.”
 

 ■In the case of. Wetzell
 
 vs.
 
 Bussard, 11
 
 Wheat.
 
 309, the subject again came before this Court; and the English and American authorities were deliberately examined. The Court there expressly held, that “ an acknowledgment which will revive the original cause of action, must be unqualified and unconditional. It must show, positively, that the debt is due, in whole or in part. If it be connected with circumstances, which in any manner affect the claim, or if it be conditional, it may amount to a new
 
 assumpsit,
 
 for which the old debt is a sufficient consideration; or, if it be construed to revive the original debt, that revival is conditional, and the performance of the condition, or a readiness to perform it, must be shown.”
 

 We adhere to the doctrine thus stated, and think it the only exposition of the statute, which is consistent with its true object and import. If the bar is sought to be removed by the proof of a new promise, that promise,, as a new cause of ac'tion, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate; and, if any conditions are annexed, they ought to ber shown to be performed. ■
 

 If there be no express promise, but a promise is to be raised -by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways; we think they ought not to go to a jury as evidence of a new promise to revive the cause of action. Any other course would open all the mischiefs against which the statute was intended to guard innocent persons, and expose them to the dangers of being entrapped in careless conversations, and betrayed by perjuries.
 

 It may be. that in this manner an honest debt may sometimes be lost, but many unfounded recoveries, will be prevented; and viewing the statute in the same light, in which it was viewed by. English Judges at an early' period, as a beneficial law, on which the security of all men depends, we think its provisions ought not*to .be lightly overturned; and that no creditor has a right to complain of a strict construction, since it is only by his own fault and laches, that it can be brought to bear injuriously upon him.- And, if the early interpretation had been adhered to, that nothing but an express- promise should take
 
 *363
 
 a case out of the statute, it is far from being certain, that it would not have generally been in promotion of justice.
 

 But the present case is not left to be determined solely upon general principles and authorities. There is a series of decisions of the Kentucky Courts, upon the construction of their own statute of limitations, which, if they differed from those of other Courts, would, as matter of local law, govern this Court upon the present occasion. In the construction of local statutes we have been in the habit of respecting and following the judgments of the local tribunals.
 

 The first, and leading cáse, is Bell
 
 vs.
 
 Rowlands Administrators, in Hardin’s Reports, SOI. In that case, the defendant made an acknowledgment, “that he had once owed the plaintiff, but he supposed hjs brother had paid it, in Virginia, (the. place where the original transaction took place, in the year 1785;) and if his brother had not paid it, he owed it yet.” The' Court held that the acknowledgment was not sufficient to take the case out of the statute; that the defendant was not bound to prove that his brotht had not paid the debt; that the law "would imply a promise, only, where the party ought to promise; and that the defendant ought not to have promised, under the circumstances of that case, to pay a debt which he supposed to be paid. But the general reasoning of the Court, which is drawn up with great clearness and force, goes much further. The Court said, that the English decisions were not obligatory upon, them, in the construction of their own statute, although similar in its provisions to the English statute; and that so far as they had gone upon nice refinements, for the purpose of> evading the statute, they must be disregarded. If the slightest acknowledgment; if strained, constructive acknowledgments and promises, are held sufficient; it must multiply litigation; produce endless uncertainty, and it is to be feared, a fruitful crop of perjuries.
 

 Slight circumstances, and a man’s loose expressions, would be construed into a full acknowledgment of the debt, when he. himself neither intended to make, nor understood himself as’ making any' acknowledgment at all. Instances of this sort are frequent in the books; but the example is too dangerous to be countenanced. And the Court further declared, “upon the whole, .we are of opinion that the only safe rule that can be adopted, capable of any reasohable certainty, is, that in order to take the case out of the statute of limitations, an
 
 express
 
 acknowledgment of the debt, as a debt due at the time, coupled with the original consideration; or an
 
 express
 
 promise to pay it; must be proved to have been made, within the time prescribed by the statute.
 

 There was another point in the case, deserving of notice.
 
 *364
 
 which was,, whether the' Court ought to have instructed the jury as to the law of the case, and then have left it with them to determine, whether .an acknowledgment of the debt, and a promise to pay it, had been proved to have been made within the five years; upon which it was held, that it was competent for the Court, either to do so, or, (as it did in that case,) taking the whole of the evidence on the part of the plaintiff as true, and the facts sworn to by the witnesses as - sufficiently proved, to instruct the jury as to the law arising upon those facts.
 

 This case has never been departed from in Kentucky, and has been frequently recognised. In Harrison
 
 vs.
 
 Handley, (1
 
 Bibb R.
 
 443,) the plaintiff, to take the case out of the statute, produced a witness, who swore, “that some time, in .May or June 1796, he presented an account to W. H. (the defendant) amounting to ¿250, or 42260; that H. objected to certain .articles in the said account; and after the said articles .were stricken out of the account; H. then acknowledged,
 
 it was all right..
 
 The Court below" ruled that this was such an acknowledgment as took the case out of the statute, but the decision was reversed by the Court of Appeals. Mr. Chief Justice Bibb, in delivering -the opinion of- the Gour.t, adverted to the case of Bell
 
 vs.
 
 Rowlands administrators; and recognised its authority in the fullest terms. And after expressing a doubt, whether an
 
 implied
 
 promise would not be barred by'the statute," he proceeded to say, “ Be that as it may, mere loose expressions and vague acknowledgments will not suffice. The acknowledgment from which the law is to raise a promise, contrary to the provisions of the statute, must be clear and express; where the mind is .br.ought-directly to the point, debt or ho debt, at the. present time;' riot-whether- ‘the debt was once an existing debt. That the law will- argumentatively make it a debt,
 
 in
 
 •preesenti, if the party does not in his acknowledgment say it is not, or prove payment; is a proposition, that. cannot be granted in opposition to the provisions of the statute. Where the limitation has run, to get clear of it, the whole burthen of proof is thrown on the plaintiff,
 
 to prove a' good■ and subsisting debt, and a promise to pay
 
 within the period prescribed to his action. The acknowledgment of. H. does not come up to this requisition. There was no express promise to pay; there was no express acknowledgment of a then subsisting debt; there was no assent to pay. “H. then acknowledged the
 
 amount was all right,”
 
 is too loose, vague, and indefinite an acknowledgment to revive a transaction, and put it under investigation again, after the law had closed it. That the amount was right, could be true, and might.well be acknowledged, if the articles had been truly noted notwithstand
 
 *365
 
 Ing the party might have paid it, or was unwilling to acknowledge it as a debt then subsisting; and that is the point to which an express acknowledgment should have been proved.” This’is certainly a very strong case to illustrate the rule, adopted in Kentucky.
 

 In Gray
 
 vs.
 
 Lawridge (2
 
 Bibb R.
 
 284,) it was proved on the trial; that the party had admitted the justice of the account ■within five years, and that it might go in discharge of the interest due on a bond of the defendant, on which tire suit was ■brought by the plaintiff. The witness did not know the particular items of the account, nor the amount thus acknowledged by the plaintiff. The Court held, that the acknowledgment did not go further, than that the demand should be allowed in payment of the interest; and that so much as the party could show of a debt due to him
 
 not exceeding the amount of the interest
 
 then-due, was taken out of the statute, and ho further. In Ormsby
 
 vs.
 
 Letcher, (3
 
 Bibb R.
 
 269,) it was decided, that an agreement of the defendant within five years, tliat a settlement, made with the brother of the defendant should be subject to the examination of either party, did not take the case.out of. the statute. It- may be inferred, that it was'a settlement of accounts between the parties, and that the action was brought for the balance due to the plaintiff; although the report does not so state. The Court said,
 
 “
 
 this agreement does not contain an acknowledgment of a subsisting demand, and a promise to pay in consideration thereof.” The language of this case, as well as -that in Harrison
 
 vs.
 
 Handley, might lead 'to the impression,'that the Court thought that an acknowledgment of a subsisting debt, was not alone sufficient; but that there must be also a promise to pay-the debt. But, perhaps it is more correct to construe it as importing no more than that there must be such an acknowledgment, coupled with circumstances, from which a promise to pay would naturally and irresistibly be implied.
 

 These are all the, decisions, which we have met. with in the Kentucky Reports on this point; They evince a strong disposition, in. the ^Courts of that state, to restrict, within very close limits, every attempt to revive debts by implied promises, resulting from acknowledgments and other confessions by parol. It is our duty to follow out the spirit of these decisions, so far as we are enabled to gather the principles on which they are founded, and to apply them to the case at bar.
 

 The evidence in the case at bar, resolves itself into two heads; first, whether the admission of a party of the existence of an unliquidated abcoúnt, on which .'something is due to the plaintiff, but no specific balance is admitted, and no document produced at the time from which- it can be, ascertained what the
 
 *366
 
 parties understood the balance to be; is sufficient to take the. case out of the statute, and let'in.the plaintiff to prove, aliunde, any balance, however large it may be: secondly, if not, whether the admission on the part of Morrison, of his willingness to pay 7,000 dollars, and close the business, might (under all the circumstances,) entitle the plaintiff to recover that amount, and thus to furnish a just objection to the ruling of the Circuit Court.
 

 In both of these views, the case is not without its difficulties; and the-Kentucky decisions present no authority directly in point. The evidence is clear of the admission of an unsettled account, as well from the letters of Butler, as the conversation of Morrison. The latter acknowledged that the partnership “was owing” the plaintiff; hut as he had not the bdoks, he could not settle with him. If this evidence stood alone, it would be too loose to entitle the plaintiff to recover any thing. The language might be equally true, whether the debt were one dollar or ten thousand dollars. It is indispensable for the plaintiff to go further, and to establish, by. independent evidence, the extent of the balance due him, before there can arise any promise to pay it as a subsisting debt. The acknowledgment of the party, then, does- not constitute the sole ground of the new implied promise; but it requires • other intrinsic aid, before.it can possess legal certainty. Now, if this be so, does it not let in the whole mischief intended to be guarded against- by the statute? Does it not enable the party to bring forward stale demands, after a lapse of time, when the proper evidence of the real state of the transaction cannot be produced? Docs it not tend to encourage perjury, by removing the bar upon slight acknowledgments of an indeterminate nature ?• Can an admission, that something is due or some balance owing, be justly construed into a promise to. pay any debt or balance, which the party may assert or prove before a jury? If there be an .express promise to such an effect, that might be pressed as a dispensation with the statute; but the question here is, whether the law will imply such a promise, from language so doubtful and general. The language pf the Court, in Harrison ««.' Han-ley, was, that “ mere loose expressions or vague acknowledgments,' will not suffice.” We think, that such a ^general admission of an unsettled account, and of anindeterminate debt, would, by the Courts of Kentucky, be held as too vague an acknowledgment to take the case out of the statute. It would not establish any particular subsisting debt, and therefore be destitúte of reasonable certainty to raise an implied promise.
 

 The other point is also not without its embarrassments. Was Morrison’s offer of 7,000 dollars, to close'the business, the absolute admission of a debt to that amount, or a conditional pro
 
 *367
 
 mise to pay that sum, if the party would accept it in discharge of his claims ? We think, taking all the circumstances, it scarcely admits of the former interpretation. It appears from the testimony itself, that Morrison did not know the state.of the partnership accounts, and had not the partnership books to enable him to ascertain it» He also expressed a personal reason for his desire to settle the account, alleging that he was growing old, and was anxious for a settleménfc His offer must therefore be deemed to be in the nature of a compromise, to pay the sum, if the plaintiff would give a complete-discharge of his-claims: or, to use his own words, “and close the business.1’ It may, therefore, be fairly deemed a conditional offer to pay a conjectural, not a known balance; to b¿y peace, and not to acknowledge an absolute debt. If this be, as we think it is, a conditional offer, then, upon the clear text of the-Kentucky, as well as the English, and of other American decisions; the case, would not be taken out of the statute, unless the plaintiff had performed the condition.
 

 But if this view of the case should be more doubtful than it seems to us to be, it still ’ remains to consider, whether the acknowledgment of one partner, after the dissolution of the co-partnership, is sufficient to take the case'biit of the statute, as to all the partners. How; far it may bind the partner, making the acknowledgment to pay the debt, need not be inquired into; to maintain the present action, it must be binding upon all.
 

 In the case of Bland
 
 vs.
 
 Haslering, (2
 
 Vent.
 
 151,) where the action was against four, upon a joint promise, and the plea of the statute of limitations was putin, and the jury found that one • of the defendants- did promise within six years, and that the others did not; three judges, against Ventris J. held that the plaintiff could not have judgment against the defendant, who had made the promise. This case has been explain-1 ed upon • the ground that the verdict did not conform to the pleadings, and establish a
 
 joint
 
 promise. It is very doubtful, upon, a critical examination of the report, whether the opinion - of the Court, or of any of the Judge's proceeded solely upon such a ground.
 

 ■In Whitcomb
 
 vs.
 
 Whiting, (2
 
 Doug.R.
 
 652,) decided in 1781, in an action on a joint and several noté brought against one of the makers, it .was held that.proof of payment, by one of the others, of interest on the note and of .part of the principal, within six years, took the case out of the statute, as against the defendant w.ho was sued. Lord Mansfield said, “ payment -by one is payment for all, the one acting virtually for all the rest; and in the same manner, an admission by. one is an admission by all, and the law raises the promise to pay, when the debt is admitted to be due.'’ This-is the. whole reasoning re,
 
 *368
 
 ported in the case, and is certainly not very satisfactory. It assumes that one party who has authority to discharge, has,necessarily, also, authority to charge the-others; that a virtual agency exists in each joint debtor to pay for the whole; and that a virtual agency exists, by analogy, to charge the whole. Now, this very position constitutes the matter in controversy. It is true, that a payment by one, does enure for the benefit of the whole; but this arises not so much from any virtual agency for the whole, as by operation of law; for the payment extinguishes the debt; if such payment were made after’a positive refusal or prohibition of the other joint debtors, it would still operate as an extinguishment .of, the debt, and the creditor could no longer sue them. In truth, he who pays a joint debt, pays to discharge himself; and so far from binding the others conclusively by his act, as"virtually theirs also, he cannot recover over against them, in contribution, without such payment has been rightfully made,arid ought to charge them.
 

 When the statute- has run 'against a joint debt, the reasonable presumption is that it is no longer a subsisting debt; and therefore, there is no ground on which to raise á virtual agency to pay that which is not admitted to exist. But, if this were not. so, still there is- a great difference between creating, a virtual agency, which is for. the benefit of all,-and one which is onerous and prejudicial to all. The one is not a natural or necessary consequence from the other. A person may well authorize the payment of a debt for which he. is now liable; and yet refuse to authorize a charge, where there at present exists no. legal liability to pay. Yet, if the principle of Lord Mansfield be correct, the acknowledgment of one joint debtor will bind all the rest, even though they should have utterly denied the debt at the time when such acknowledgment was made.
 

 - The doctrine of Whitcomb
 
 vs.
 
 Whiting, has been followed ■ in England in subsequent cases, and was applied to in a strong manner, in Jackson
 
 vs.
 
 Fairbank, (2
 
 H. Bl.
 
 340,) whe-e the admission of a creditor to prove a debt, on a joint and several note under a bankruptcy, and. to receive a dividend, was held suffi- . cient to charge a solvent joint debtor, in a several action against, him, in which he pleaded the statute, as an acknowledgment of a- subsisting debt. If has not, however, been i-eceived without hesitation, • In Clark
 
 vs.
 
 Bradshaw, (3
 
 Esp.
 
 R. 155,) Lord Kenyon,..at
 
 Nisi Prius,
 
 expressed some doubts upon it; and the cause went off on- another ground. And in Brandram
 
 vs.
 
 Wharton, (1
 
 Barn.
 
 &
 
 Ald.
 
 463,) the case was very much shaken, if not overturned. Lord Ellenborough, upon that,occasion used language, from which his dissatisfaction with the whole doctrine," may be clearly inferred. “This doctrine,” said he, “of rebutting the- statute of limitations by an acknowledgment dther
 
 *369
 
 than that of the party himself, begun with the case of Whitcomb vs. Whiting. By that decision, where however there was an
 
 ea¿press
 
 acknowledgment, by an actual payment óf a part of the debt by one of the parties, I am bo'und. But that case was full of hardship; for this inconvenience may follow from it. Suppose a person liable jointly with, thirty or forty others, to a debt, he may-have actually paid.it,he mayhave had in his possession .the document, by which that payment was proved, but may have lost his receipt. Then, though this was one of the very cases which this statute was passed to protect, he may still be bound and his liability; be renewed, by a random acknowledgment made by some one of the thirty or forty others, who may be careless of what mischief he is doing, and who may even not know of the payment which has been made.' Beyond that case, .uerefore, I am not prepared to go, so as to deprive a party, of the advantage given him by the statute, by means'of an
 
 implied
 
 acknowledgment.”
 

 ■ The English cases decided since the American «evolution, are by an express statute of Kentucky, declared not to.be of authority in their Courts; and consequently Whitcomb
 
 vs.
 
 Whiting in Douglas, and the cases -which have followed it, leave the question in Kentucky quite open to be decided upon principle.
 

 In the American Courts, so far as our researches have extended, few'casés' have been litigated upon this question.
 
 *
 
 In Smith Damor vs. D. & G. Ludlow, 6
 
 Johns. R.
 
 267, the suit was brought against both partners, arid one of them pleaded the statute. Upon the dissolution of the partnership, public notice was given, that the óther partner was authorized to adjust all accounts; andan account sigrtedby him, after such advertisement, and within six years, was introduced. It was also proved, that 'the plaintiff called on the partner who pleáded the statute, before the commencement of the suit, arid requested a .settlement, and tliathe then admitted an account, datéd in 1797, to have been made out by him; — that he thought the account had been settled by-the-other defendant, in whose hands the books of the partnership were, and that he .would see the other defendant on the subject, and communicaté the result to the plaintiff. The Court' held that this was sufficient to take thé case out-of, the statute; and said,'that without any express authority, the confession of one partner, after the dissolution, will take a debt out of the statute. The acknowledgment will not,
 
 *370
 
 of itself, be evidence of an original debt; for, that would en* able one party to bind the other in-new contracts. But'the original debt being proved or admitted, the confession of one will bind the other, so as to prevent him fromravailing himself of the statute. This is evident, from the cases of Whitcomb
 
 vs.
 
 Whiting, and. Jackson
 
 vs.
 
 Fairbank; and it.results necessarily from the power given to adjust accounts. The Court also thought the acknowledgment of the partner setting up the statute, was sufficient of itself to sustain- the action. This case has the peculiarity of an acknowledgment made by both -partners, and a formal acknowledgment by the partner who was authorized to-adjust the accounts after the dissolution of the partnership. There was not, therefore, a virtual, but- an express, and notorious agency, devolved on him, to settle the account. • The correctness of the decision, cannot, upon the general view taken by the Court, be. questioned. In Roosevelt
 
 vs.
 
 Marks, 6
 
 Johns. Ch. Rep.
 
 266. 291, Mr. Chancellor Kent admitted the authority of Whitcomb
 
 vs.
 
 Whiting; but denied that of Jackson
 
 vs.
 
 Fairbank, for reasons which appear to us solid and satisfactory. Upon some other cases in New-York, .we shall have occasion hereafter to comment. In Hunt
 
 vs.
 
 Bridgham, 2
 
 Pick. R.
 
 581, the Supreme Court of Massachusetts, upon the authority of the cases in Douglass, H. Blackstone, and Johnson, held that a partial payment by the principal debtor on a note, took the case; out of the statute of-limitations, as against a surety. The Court do not proceed to any reasoning to establish the principle, considering it as the re-suit,of the authorities. Shelton
 
 vs.
 
 Cocke, 3
 
 Mumford’s R.
 
 191, is to the same effect; and contains a mere annunciation of the rule, without any discussion of its principle. Simpson
 
 vs.
 
 Morrison, 2
 
 Bay’s Rep.
 
 533, proceeded upon a broader ground, and assumes the doctrine of the case in 1
 
 Taunt. Rep.
 
 104, hereinafter noticed, to be correct. Whatever may be the just influence of such recognitions of the principles of the English cases, in other states; as the doctrine is not so settled in Kentucky, we must resort to such recognition, only, as furnishing illustrations, to assist our reasoning; and decide the case now as if it had never been decided before.
 

 By the general law of partner ship,, the act of each partner, during the continuance of the partnership and within the scope of its objects,..binds all the others. It is considered the act of each and of all, resulting from a general and mutual delegation of authority. Each' partner may, therefore, bind the partnership by his contracts in the partnérship business; but he cannot bind it by any contracts beyond those limits. A dissolution however puts an end to the authority. By the force of its terms . it operates as a revocation of all power to create new contracts;
 
 *371
 
 and the right of partners as such can extend no further than •to settle the partnership concerns already existing, and to distribute the remaining funds. Even this right may be qualified, ■ and restrained, by the express delegation of the whole author- < ity to one of the partners.
 

 The question, is not however as' to the authority of a partner after the dissolution to adjust, an admitted and subsisting, debt; we mean, admitted by the whole partnership or unbarred by the statute; but whether he can, 'by his sole act, after the action is barred by lapse of time, revive it against all the partners, without any new authority communicated to him for-this purpose. We think the proper resolution of this point depends upoivanother, that is, whether the acknowlegdnient or promise, is' to be deemed a mere continuation-of the original promise, or a new contract, springing out of and supported by the original consideration. We think it is-the latter, both upon principié and authority; and if so, as after the'dissolution no one partner can create a new contract, binding upon the others, his acknowledgment is inoperative and void, as to them.
 

 There is some confusion in the language of the books, resulting from a want of strict attention to, the- distinction here- . indicated. It is often said that an acknowledgment revives the promise, when it is meant, that it revives the
 
 debt
 
 or
 
 cátese óf. action.'
 
 The revival of a debt, supposes that it has been once extinct and gone; that-there has been a period in which it had lost its legal use and validity. The act which revives it, is what essentially constitutes its new being, and is inseparable from it. It stands not by its original force, but by the new. promise;'which imparts vitality to it. Proof of the latter is indispensable to raise the
 
 assumpsit.,
 
 on which'an action can be maintained. It was this view of the matter, which first created the doubt, whether it was not necessary that a new consideration should be proved to support the promise, since the old consideration was gone. That doubt has been overcome; and it is now held, that the original consideration is sufficient, if recognised, to uphold the new promise, although the statute cuts it off, as a support for the old. Wliat, indeed, would seem to be decisive on this subject, is, that the new promise if qualified or conditional, restrains the rights of the party to its own terms; and if. he cannot recover, by those terms, he cannot recover at all. If a pérson promise to pay, upon condition that the other do an act, performance must be shown, before any. title accrues. If the declaration lays a promise by oi-to an intestate, proof of the acknowledgment of the debt by or to his personal representative, will not maintain the writ. Why not, since it establishes the continued existence of the
 
 *372
 
 debt? The plain reason is, that the promise’is a new one, by or to the administrator himself, upon the original consideration; and hot a revival of the original promise. So, if a man promises to. pay a pre-existing debt, barred by the statute, when he is able. or. at a future, day, his ability must shown; or the time must be passed before the action can be maintained. Why ? Because it rests on the new- promise, and its terms must be complied with. We do not here speak of the form of -alleging the promise in the declaration; upon, which, perhaps, there.has been a diversity of opinion and judgment; but of the fact itself, whether the promise ought to be laid in one way or another, as an absolute, or as a. conditional promise; which may depend tipon the rules of pleading.
 

 This very point came before the twelve Judges, in the case of Hyling
 
 vs.
 
 Hastings, (1 Ld.
 
 Raym.
 
 389, 421,) in the time of Lord Holt. There, one of the points was, “whether the acknowledgment of a debt within six years, would amount to a
 
 new
 
 promise, to bring it out of the statute; and they were all of opinion, that it .would not, but that it was
 
 evidence
 
 of a promise.” Here then, the Judges n anifestly contemplated the acknowledgment,' not as a continuation of the old promise, but as evidence of a
 
 new
 
 promise; and that it is the
 
 new promise,
 
 which takes the case out of the statute. Now, what is a new promise, but a new contract ? a contract to pay, upon a preexisting consideration, which does not, of itself, bind the party to pay, independently of the contract? So, in Boydell
 
 vs.
 
 Drummond, 2
 
 Camp. R.
 
 157, Lord Ellenborough, with his characteristic precision, said, “if aman acknowledges the existence of a debt, barred by the statute, the law has’been supposed to raise a
 
 new
 
 promise to pay it, and.tints.the
 
 remedy
 
 is revived.” And.it may be affirmed, that the general current of the English, as well as the American authorities, conforms to this view, of thgj operation of an acknowledgment. In Joneses. Moore, (5
 
 Binney R.
 
 573,) Mr. Chief Justice Tilghman, went into an elaborate examination of this very point; and came to the conclusion, from a review of all the cases? that an acknowledgment of the debt, can only be considered as evidence of a
 
 new
 
 promise; and he added, “I cannot comprehend the meaning of
 
 reviving
 
 the,old debt, in any other manner, than by a neto promise-.”
 

 . There is a class of cases, not yet adverted to, which materially illustrates the right and powers of partners, after the dissolution of.the partnership, and bears directly oh the point under consideration. ' In, Hackley
 
 vs.
 
 Patrick, (3
 
 Johns. R. 536.)
 
 it Was said by the Court, that “ after a dissolution of the partnership, the power of one party to bind the others, wholly ceases. There-is no reason why his acknowledgment of an account,
 
 *373
 
 should bind his co-partners, any moré than his giving a promissory note* in the name of the firm or any other act. ” And it was therefore held, that the plaintiff.must produce further evidence of the existence of an antecedent debt, before He could recover; even though, the acknowledgment was by a partner,, authorized to settle all the accounts of the firm. This doctrine was again recognised by. the same Court,' in Malden
 
 vs.
 
 Sherburne (15
 
 Johns. R.
 
 409, 424,) although it was admitted, that in Wood vs. Braddick.(l
 
 Taunt.
 
 104,).a different decision had been had in England. If this doctrine be well founded, as we think it is, it-furnishes a strong ground to question the efficacy of an-acknowledgment to bind the partnership for any purpose. If it does not establish the existence of -a debt against the partnership, why should it'be evidence against it at all? If- evidence, aliunde, of facts within the reach of the.statute, as the existence of a debt, be necessary before the. acknowledgment binds, is not this letting in all the mischiefs against which the statute intended to guard the parties: viz. the introduction of stale and dormant demands, .of long standing, and of uncertain proof? If the acknowledgment, per
 
 se,
 
 does not bind the other partners, where is the propriety of admitting proof of. an antecedent debt, éxtinguishecl by the statute as to them, to be revived without their -consent ? It seéms difficult to find a satisfactory reason, why an acknowledgment should raise a new promise, when the consideration upon-which'alone it rests, as a légal obligation, is .not coupled with' it in Such a shape as to bind the parties;, that the- parties are not bound by the admission of the
 
 debt,
 
 as a' debt, but, are bound by the acknowledgment of the debt, as a promise, upon extrinsic proof. .The doctrine in 1
 
 Taunt.
 
 104, stands upon-a clear, if it be a legal-ground; that as to the things- past, the partnership continues and always must continue, notwithstanding-the dissolution. That however is á matter which we are not prepared to admit, and constitutes the very ground now in controversy,
 

 , The light in which we are disposed to consider this question is, that after a dissolution of a partnership, no partner can create a cause of action against the other partners, except by a new authority communicated to him for that -purpose. It is •wholly'immaterial, what is the consideration which is to raise' such cause of action; whether it be'a supposed pre-existing debt of the partnership, or any auxiliary consideration, which might prove beneficial to them. Unless adopted by them, they are not bound by it. When the statute of- limitations has once run' against a debt, the cause of action against the partnership is gone. The acknowledgment, if it is to operate at all, is to
 
 *374
 
 create a new cause of.action; to revive a debt which is extinct; and thus to give an action which has its life from t.he new promise implied by law from such an acknowledgment, and operating and. limited by it's purport. It is then, in its essence, the creation of a new rig'ht, and not the enforcement of an old one. We think, that the power to create such aright does not'exist after a dissolution of the partnership in any partner.
 

 There is a case in the Kentucky Reports, not cited at the bar, which coincides, as far as it goes with our own • views; and if taken, as a genéral exposition of the law, according to its terms, is conclusive on this point. It is the case of Walker and Evans vs. Duberry (1
 
 Marshall’s Rep.
 
 189.) It is very briefly reported, and the’opinion of the Court was as follows. “ We are of opinion that the Court below, improperly admitted as evidence against Walker, the certificate of J. T. Evans, made after the dissolution of the partnership-, between Walker and Evans.* acknowledging that the partnership firm was indebted to the defendant Duberry, in the sum demanded, in the action brought by him, in the Court below. It cites 3
 
 Johns. Rep.
 
 536. 3
 
 Mumf. R.
 
 191.
 

 It does not appear what was-the state of facts in the Court below, nor whether this was an action in which the statute of limitations was pleaded, or only
 
 non assumpsit
 
 generally. Btit the position is .generally asserted, that the acknowledgment of a debt by one partner after a dissolution, is not evidence against the other.. Whether the Court meant to say, in no-case, whatever, or only when the debt itself was proved
 
 ¡aliunde,’
 
 does not appear. Its language is general and would seem to include.all cases; and if any qualification were intended, it would'have been natural for the Court to express that qualification; and have confined it; to the circumstances of the case. The;only room for doubt', arises from the citations of 3
 
 Johnson
 
 and 3'
 
 Mumford.
 
 The former has been already adverted to; and the latter Shelton vs. Cocke & others (3
 
 Mumf. R.
 
 191,) recognised the distinction asserted in 3
 
 Johns. R.
 
 as sound-. - These citations may, however, have been referred to as mere illustrations, going to establish the proposition of the Court to á certain extent, and not as limitations of its extent. Ip any viéw, it leads to the-most serious' doubts, whether-'the state" Courts of Kentucky would ever adopt the doctrine of Whitcomb
 
 vs.
 
 Whiting in Douglas; especially so, as the early casein 2
 
 Vent. 151,
 
 carries an almost irresistible presumption, that the Courts, at that.time, held a doctrine entirely inconsistent.with,the case in- Douglas.-
 

 Upon the whole, it js- our. judgment that there is no error in the decision of the-Circuit-Court, and it ought to.be affirmed.-
 

 
 *375
 
 It is, however, to be understood that this opinion thus expressed, is not unanimous, but of the majority of the Court; and as is apparent, from the preced ng reasoning, it has been, principally, although not exclusively, influenced by the course of decisions in Kentucky upon this subject.
 

 Judgment affirmed, with costs.
 

 *
 

 See also Brown
 
 vs.
 
 Campbell, 1
 
 Serg. & Rawle, 176.
 
 Tries
 
 vs. Boise
 
 let, 9
 
 Serg. &
 
 Rawle, 128.
 

 *
 

 The Reporter has been informed, by Mr. Chief Justice Gibson, that, at the December Term, 1827, of the Supreme Court of Pennsylvania, tile Court decided, after full argument, that the - acknowledgment by a partner, after the dissolution of the partnership, will not take'the. debt out of the statute, so as to make the other former-partners liable. This case will bs reported by Messrs. Sergeant & Maude,