The opinion of the Court was delivered by
Wardlaw, J.
Judgment non obstante veredicto can be rendered only for a plaintiff. It is proper where the defendant by •insufficient pleading, good in form but not in fact, has confessed the plaintiff’s action, but not avoided it, and a verdict for the defendant has followed an issue, so inconclusive that whichever *214 way it may have been found, there would still have appeared no valid defence.
Matter, which would have been good cause of general demurrer, will not, after verdict, sustain a motion in arrest of judgment, where the defect of allegation may be supplied by intendment of that, without the proof of which a verdict could not properly have been rendered. But where, after all that is consistent with the allegations actually made has been supplied by intendment, there still appears on the record a defect in substance, judgment must be arrested even after verdict, notwithstanding that an earlier condemnation of the defect might have been obtained by demurrer. The result will be that the party who might have recovered judgment and costs upon demurrer, by motion in arrest terminates the suit without judgment and of course without recovery of costs.
Where upon motion it appears, that the verdict has been rendered upon an immaterial issue, both parties are discovered to be in the wrong, and a repleader is awarded, under which they must renew their altercation, beginning at that step in the pleading which was first defective.
In this case the declaration and plea are unexceptionable. The replication first introduces matter of dispute. Instead of demurring to it, the defendant rejoined, by traversing not specifically the particular acknowledgment by payment which the replication alleged, but all acknowledgment of the plaintiff’s action within four years: and an issue of fact was joined on this traverse. On circuit there was neither debate nor decision concerning the pleadings, but simply a trial of the issue which had been presented. In this Court a repleader is not distinctly moved, either in the grounds of appeal, or in the argument: Nor is the insufficiency of the replication strenuously urged: but still the matter has been so discussed, that a decision of it becomes necessary, as a preliminary to the question which has chiefly engaged attention.
Our statute of limitations (2 Stat. 585, sec. 6, 1712,) differs from the English statute of 21 Jac. I. c. 16, in these particulars *215 relative to the present suit,: the English statute embraces “ all actions of debt grounded upon any lending or contract without specialty, all actions for arrearages of rent.” Ours “ all actions of debt grounded upon lending or contracts without specialty, all actions of debt for arrearages of rent reserved by indenture, all actions of covenant.” By the English statute an action of debt on indenture reserving rent is not limited, (1 Saund. 38 ; 14 Johns. R. 479 ; 7 Johns. Ch. Cases 90.) By ours it expressly is : and by ours actions of covenant are limited, whilst all actions on specialty are exempt from the operation of the English statute.
The application to an action of covenant, of the doctrine of admissions in answer to a plea of the statute of limitations, presents many technical difficulties. The whole doctrine has grown up in cases of assumpsit, and has been, in theory and practice, accommodated to that form of action. When we undertake to apply it to an action of covenant, we are met by the rules, that a parol promise cannot be joined with a covenant in one action,: and that no agreement, not even a subsequent covenant, can either in pleading or evidence, be relied on to give vitality or additional effect to a former covenant where breach is complained of, but the subsequent one must itself be the ground of suit, if its obligation is indispensable to the plaintiff’s success. An' acknowledgment cannot then, in saving a covenant from the bar of the statute of limitations, operate either as a parol promise or as evidence of such promise: as a covenant or as evidence of a covenant. To have effect it must be held simply to keep the original covenant out of the purview of the statute, as it has been expressed, to continue its obligation notwithstanding the statute, to keep it alive, to show that it does not fall within the reason or the meaning of the statute : and this it cannot do, by way of confirmation or re-delivery, but by working an influence upon the privilege, which the covenantor would otherwise have had,.to claim benefit from the statute. This privilege he may waive, is always supposed to waive where he does not plead the statute, and must be held to waive, for time antecedent, by dis *216 tinctly acknowledging its obligation whilst it yet has legal force. In this view it appears that the acknowledgment must be made before the bar of the statute has become complete: if made afterwards, it is only a promise in consideration of a former covenant obligatory in conscience but not in law, and must be sued upon as an original promise — in assumpsit, or debt on simple contract, if it is by parol — in covenant, or debt on specialty, if it is under seal.
We are constrained to sustain the efficacy of acknowledgments in actions of covenant, as here limited, by reflecting upon the strange anomaly and gross injustice, that would be presented by a case where a covenant to pay had been constantly acknowledged by repeated payments, until the statutory time after its delivery had expired, and then the statute of limitations was allowed to bar all further obligation. Such a case is not answered by saying, that after payment time was extended until the next payment, and so the cause of action did not arise. If one cent of either principal or interest was unpaid at the time specified in the covenant for payment, or at the precise day fixed by any subsequent agreement for forbearance, the cause of action would arise, and the statute would run on, if acknowledgment did not arrest it. The question is new, and upon future occasions the principles upon which in actions of covenant, effect may be given to acknowledgments, may be better understood and explained, than they have been by us in this case. But we are confident that acknowledgments made, whilst the bar is yet incomplete, should avail: and we see only technical difficulties in applying, to the action of covenant, the equitable considerations which have moderated the rigor of the statute in actions of assumpsit. The same difficulties would arise in actions of debt for arrearages of rent reserved by indenture : and in part, but with much diminution, they would extend to actions of debt grounded upon lending or contract without specialty.
Upon the indenture of lease, which is the foundation of the present suit, an action of covenant might have been brought, for non-payment of the first year’s rent, at any time after the *217 20th November, 1841: and successively an action for the rent of each of the two other years, at any time after the 20th of November, 1842, and the same day in 1848. The plaintiff being a person beyond seas, (the limits of the State,) at the time the cause of action accrued, was, under the 10th section of our statute of limitations, entitled to bring his action at any time within five years thereafter. Special attention has, by the replication and course of the arguments, been directed to the payment in January, 1847. But the issue being general as to any acknowledgment, the credits endorsed on the indenture and proved by Shelton to be, as to times and dates, correct endorsements of payments actually made, show that, if Hampton’s acknowledgments were contained in the payments, no part of the obligation was ever at any time barred before commencement of the suit, (in April, 1849.)
The remaining question and the chief one in the case, is, whether an acknowledgment by the defendant, Hampton, was made within the statutory period : and that is resolved into the question, whether Shelton, who paid, was Hampton’s agent to acknowledge? It is a question of fact, and seems to have been submitted to the jury upon all the evidence that was introduced. The finding of the jury, if it could have been authorized by the evidence, would, as in ordinary questions of fact, be held conclusive, if it was uninfluenced by erroneous instructions as to the law.
The report shows, that when 1 tried the case on the circuit, I took only two views of the relation between Hampton and Shelton. I held, that if, according to the understanding between them, Shelton was to be mere agent to occupy, Hampton himself expecting to pay the rent, Shelton’s acknowledgment could not bind Hampton. This was correct; for in such case, Shelton would have been no more than a servant, authorized to occupy, but in no way entrusted with payment. From his voluntary payment, a charge upon Hampton would no more have resulted than from the payment of any officious stranger. The payment might have extinguished fro tanto the plaintiff’s right *218 to look to Hampton, but no charge resulting from it could have devolved upon Hampton, without his previous authority, or subsequent ratification. In the other view, I held that if Shelton was to be really the tenant, himself to enjoy the premises and to pay for them, Hampton being merely surety for his performance, the payment of Shelton was the payment of Hampton; Of course under these instructions, if the jury took the latter view of the relation between Hampton and Shelton, (and it was the one sustained by Shelton’s testimony and the acknowledged circumstances of the case,) the payments of Shelton being established, the same acknowledgments of Hampton resulted from them as if they had been made by Hampton himself. The question really submitted to the jury was then narrowed to an enquiry into the relalion between Hampton and Shelton and the verdict does not establish the fact that Shelton was Hampton’s agent to acknowledge, unless it be true, as matter of law, that in the latter view of the relation between them, this agency is implied from Shelton’s payment.
Where principal and surety are jointly bound, so long as the joint obligation subsists, an acknowledgment of it made by one is the act of both. The testimony of Shelton, that by agreement between himself and Hampton, well known to both the original covenantee and his assignee, Hampton was to be his surety, suggested the ordinary case of principal and surety, jointly bound, and my attention was not diverted from the consideration of the consequences which were involved in such case. The arguments since heard, have pointed to the distinction between joint and several obligations, and we must try the instructions which were given, by that distinction.
Hampton, solely, was the party to the covenant on the one side: Glascock on the other. The agreement between Hampton and Shelton was collateral. By that agreement, of itself, Shelton incurred no obligation to Glascock. If by his subsequent enjoyment of the premises demised, he became at all liable to the lessor, or his assignee, the liability was not one which discharged Hampton, or which could have sustained any action *219 against him and Hampton jointly, especially not an action on the covenant. By the agreement, Hampton was Shelton’s surety — one who engaged to answer for his default, one who incurred liability for his benefit, who after payment for him would have been entitled to indemnity : but not one who was bound jointly with him. If we admit that this agreement preceded the covenant and appears upon its face, still there is no joint obligation to the lessor. It is like-the case of one who buys for a friend and gives his own written undertaking for payment to the seller, securing his friend’s liability over to himself by an agreement which is mentioned in the writing delivered to the seller.
Partial payment of a debt is, in general, the strongest evidence of an admission that the person-paying is liable to pay the remainder. Where there is a joint obligation, payment by one of the obligors is evidence of admission by all: because by entering into a joint agreement they have conferred authority on each other as to the joint duty created by the agreement; because there is a community of interest, and one cannot charge the others, by an admission, without equally charging himself: and because of technical difficulties that would result from holding that an obligation, which subsists jointly, should be in any way affected by an admission, but yet affected, not in its original joint shape, but as a new and several obligation of the obligor, who made the admission.
The leading case of Whitcomb vs. Whiting, (Douglass, 652, 1 S. Lead. Cases, 318,) however much it has been questioned as to the virtual authority to make admissions, which seems to have been ascribed by Lord Mansfield to every payment made by a joint contractor, has, as to the force of an admission actually made by a joint contractor, been unhesitatingly followed by many cases in England, (of which Pease vs. Hirst, 10 B. & C. 122; Burleigh vs. Stott, 8 B. & C. 36, and Perham vs. Raynal, 2 Bing. 306, are worthy of special notice,) and by cases in our own State: Silman vs. Silman, 2 Hill, 43 6; Lomax vs. Spierin, Dud. 365: see also Frazer vs. Perdriau, 1 Bail. 172; Reigne vs. Desportes, Dud. 118; Meggett vs. Finney & Jones, 4 Strob. 220.
*220 The English cases give force to the admission at whatever time made. Our cases following Bell vs. Morrison, (1 Peters, 351,) require the admission to be made before the joint obligation was barred by the statute of limitations. The doctrine prevails in respect to all debts arising from contracts joint, or joint and several, as to which there may be joint actions against the contractors, whether they have, in the joint and several contracts, been in fact sued jointly or severally.
But it has in no case been extended to a debt due from two or more persons upon their contracts merely several. The distinction is illustrated strongly in decisions under Stat. 9 Geo. 4th, ch. 14, which required an admission to take a case out of the statute of limitations, to be in writing. A proviso declared that “ nothing herein contained should alter, or take away, or lessen, the effect of any payment of any principal or interest by any person.” It was accordingly decided in Channell vs. Ditchburn, (5 M. <fc W. 494,) that partial payment by one of several original joint contractors, of either principal or interest contained in the original debt, revived the remedy against the other parties, although they were sureties only, and although the payment was not made until after the statute of limitations had barred the original debt. - But in Atkins vs. Tredgold, (2 B. & C. 23,) it was held, that where the original community of interest and liability had ceased by the death of one of the joint contractors, his executors would not be prejudiced or made liable, by .part payment, subsequently made, by the other debtor. And in the case of Slater vs. Lawson, (1 B. & Ad. 396,) it was, e converso, held, that after severance, by the death of one, the surviving debtor could not be affected by part payment made by •the executor of the deceased. In Perham vs. Raynall, before cited, which strongly enforces the rule as to joint contractors, the distinction is recognized, under which, as to a contract originally several, or one severed by death, an admission can avail only against him who made it. It is believed, that in every case of guarantor, drawer, endorser or other several contractor, the universal rule has been preserved, that one party is unaffect *221 ed by the admission of another liable to pay the same debt, but liable under a separate contract. If the admission made by another person liable for the same debt should have been authorized or ratified, by a separate contractor, then the latter is bound by it, not by reason of any inherent efficacy which belonged to it, as the admission of a debtor for the same debt, but because it was in fact his own admission.
There was then nothing in the relation of principal and surety, subsisting between Shelton and Hampton, which of itself and independent of a joint contract between them and the lessor, could have charged one by the admission of the other. If Shelton rvas not liable at all to the plaintiff, the admission made by him was not made by a person who had common interest, and who could not charge Hampton without charging himself. If Shelton was liable, as the person whose goods were on the premises, or as the person who enjoyed the use of them, he was liable severally and not jointly with Hampton, and was not at all liable on the covenant, rvhich the replication says has been acknowledged.
There was then error in the instructions by which the jury should have been guided in the finding of the facts submitted to them. But it has been supposed that the verdict was sustained by the evidence, and that it should stand as decisive of the fact of agency, the instructions being immaterial.
Under the expressions imputed to Lord Mansfield, that a virtual agency to pay is a virtual agency to charge by the admission thence inferrible, it has been contended that the payments in this case, went in discharge of the covenant, and of consequence, the admission of the covenant followed. If this reasoning Avas correct, it may be seen that the English cases before-cited, refusing to charge a party by payments made after severance of a joint contract, Avere Avrong. But Lord Mansfield in Whitcomb vs. Whiting, spoke only of joint contractors, and even as to them, the error, of not distinguishing between an agency to pay and an agency to make admissions, has been well exposed by Judge Story in Bell vs. Morrison, and in his treatise *222 on Partnership, sec. 323. A payment extinguishes a debt, pro tanto, as' to all the parties claimed to be debtors, and does so, even when made by one of them contrary to the express prohibition of the others. It does not then necessarily imply an authority to charge all who may derive benefit from it. Shelton may have paid because he recognized his duty to do so, either under his engagement with Hampton, or under his liability to the plaintiff: his payment must enure to the partial extinguishment of the debt secured by the covenant. But how shall his performance of his several duty affect another 1 How shall his recognition of his own obligation continue the force of Hampton’s ?
Again the covenant, it is said, recognizes Shelton as agent, when it provides that he “ is to take possession of the said Hampton Race Course and its appurtenances, as the agent of the said Wade Hampton.” Now admit, that this taking of possession means, ■ that he is to hold and enjoy the premises during the lease, as the subsequent provisions for the contingency of his death seem to imply. If mere agent to occupy, not expected to pay, Shelton- could'not have charged Hampton, as we have shewn under the first view of the relation between him and Hampton. If he was agent, intended to pay, in effect a substitute for Hampton in the lease, except only that Hampton’s covenant stood to secure payment, he was, at most, a several contractor. As such agent to occupy, of substitute, his agency, or substitution, expired with the lease. Hampton’s covenant could not have applied to the rent Shelton would have owed for subsequent years, if he had held over: and even upon the supposition that Hampton would have been chargeable with Shelton’s acts and admissions during the lease, the covenant, independent of evidence of Hampton’s acknowledgements of what Shelton afterwards did, can not extend the agency beyond the term specified in the lease. Authority to pay at a certain time is not authority to pay indefinitely afterwards, so long as by repeated acknowledgements, within certain intervals, the delinquent agent may choose to keep alive the obligation and his powers to charge the principal under it. An agent to pay, like other agents, must keep within *223 the scope of the authority committed to him. One who was directed to pay a part, upon receiving a discharge for the whole, was held to have created no charge upon his principal by making the partial payment without obtaining the discharge, Linsell vs. Bonsor, 2 Bing. N. C. 241. Hampton’s covenant, construed with reference to the anticipated substitution of Shelton was, that Shelton should pay the rent as stipulated. When the covenant was broken by non-payment, the statute began to run against it. No act of the plaintiff, by writing on the indenture, or other means, could, of itself, charge Hampton : nor could any act of Shelton, or joint act of Shelton and the plaintiff without authority from Hampton. The plaintiff’s cas^ifcifecan be supported, must then stand upon evidence of a^rcW^Bmnd above what appears in the indenture, or inShelj^34^plan^fe>ííítQf the relation between himself and Hamptq$C -'/?'’'
Much learning has been expende^ ton was Hampton’s assignee of the fn the^tfew tíStt'Shel- - .V knowledgement of his assignee would notKp’ltselqpáve efoarged Hampton, any more than the admission of a^-^íftíeríp^son severally liable for the same debt. No joint actfótfbti a covenant in a lease can be sustained against the lessee and his assignee. But in truth this view is far-fetched. A lessor may have debt or covenant for rent, or for not repairing, &c. against the assignee of the term at common law, (3 Rep. 22, Walker's case,) but in such case the action, whether debt or covenant, is local, because it is founded upon the privity of estate only, between the lessor and the assignee of the term, the privity of contract being discharged by the assignment, (1 Saund. 241 c.; Carth. 182, 3.)
A specialty must be assigned by an instrument of as solemn a nature as the contract assigned. (Bac. Ab. Assignment, B.)
A landlord cannot maintain an action of covenant for arrears of rent against a party occupying demised premises, charging him as assignee, when in fact such party never had an assignment of the lease, (12 Wend. 555.)
Although from Shelton’s possession an assignment to him would have been presumed, it would have been competent *224 for him, when sued as assignee, - to have rebutted the presumption by showing that in fact the lease had not been assigned. It has not been hinted that there really was an assignment in writing, even without seal.
For these reasons, then, an action of covenant would no where have lain against Shelton as assignee, and especially not in Charleston district, where the demised premises are not situate.
In Chitty’s Pleadings, page 119, (10 Amer. Edition,) it is said, “ A peculiar case is put in Co. Lit. 231 a, viz: that if a lease be made to A. and B. by indenture, between the landlord of the one part and A. and B. of the other, and A. only execute it, but B. agree thereto and enjoy the premises by virtue of the demise, an action may be maintained against A. and B. jointly upon a covenant therein running with the land, and purporting to he made by them. This has been supposed to be an authority for the position that in the above instance an action of covenant may be maintained against A. andB., (Com. Dig. Covenant, A, 1; 5 B. & C. 602,) but the authorities cited in Co. Litt. do not support the position, and it has been disputed with much appearance of reason in a recent valuable publication (Platt on Covenants, 10, 18.”) The present case, though something like the peculiar case put, differs in these material respects: that here the indenture does not set out Shelton as a party, and the covenant to pay does not purport to be made by him and Hampton. We need not, then, enter into the dispute which the case put has occasioned.
The verdict is set aside and a new trial ordered.
O’Neall, Frost, Withers, Whitner and Glover, JJ., concurred.'

Motion for new trial granted.