## ANDREW SIGOURNEY *versus* THOMAS DRURY Junior *et al.*

The payment of interest by the principal promiser in a joint and several promissory note, annually, from the time when the note was given, is sufficient to take the note out of the statute of limitations, as against the surety. [But see Revised Stat. c. 120, § 14, 17.]

ASSUMPSIT on a promissory note, dated June 13, 1823, by which the defendants, Thomas Drury junior, as principal, and Zebulon Cary and Alvah Drury, as sureties, jointly and severally promised to pay Leonard Cary or his order, the sum of $270, in one year from the date, with interest. By an indorsement on the note, dated July 20, 1823, Leonard Cary guarantied the payment of the note to the plaintiff.

By an agreed statement of facts it appeared, that Thomas Drury junior paid the interest on this note from year to year until June 13, 1831 ; but it did not appear, whether Alvah Drury was knowing to such payments or not, unless such knowledge would be presumed from the fact that such payments were made by Thomas Drury junior.

Or January 23, 1832, Thomas Drury junior and Zebulon Cary both failed in business, and became insolvent. On January 24, 1832, this action was commenced. Thomas Drury junior and Zebulon Cary were defaulted in the Court of Common Pleas. Alvah Drury pleaded the statute of limitations, and issue was duly joined thereon.

Judgment was to be rendered for the plaintiff or for Alvah

Drury, according to the opinion of the Court upon this state-
ment of facts.

Oct. 4th.

Barton and Bacon, for the plaintiff, cited Bangs v. Hall,
2 Pick. 368 ; Whitney v. Bigelow, 4 Pick. 110 ; Hunt v
Bridgham, 2 Pick. 581 ; Oxford Bank v. Lewis, 8 Pick.
458 ; White v. Hale, 3 Pick. 291 ; Whitcomb v. Whiting,
2 Doug. 652 ; Smith v. Ludlow, 6 Johns. R. 267 ; Stark. on
Evid. (Metcalf's edit.) 897.

Davis and Washburn, for the defendants, cited Thompson v.
Peter, 12 Wheat. 565 ; Hathaway v. Haskell, 9 Pick. 42 ,
Bell v. Morrison, 1 Peters's Sup. Ct. R. 351 ; Atkins v.
Tredgold, 2 Barn. & Cressw. 23 ; Brandram v. Wharton,
1 Barn. & Ald. 463 ; Wyatt v. Hodson, 8 Bingh. 309 ; Per-
ham v. Raynal, 2 Bingh. 304 ; Burleigh v. Stott, 8 Barn.
& Cressw. 36 ; Pittam v. Foster, 1 Barn. & Cressw. 248 ;
3 Kent's Comm. 26 ; Bound v. Lathrop, 4 Connect. R.
339 ; Roosevelt v. Mark, 6 Johns. Ch. R. 266, 291 ; Angell
on Limit. 276 ; Clementson v. Williams, 8 Cranch, 72 ;
Bangs v. Hall, 2 Pick. 368 ; Gardner v. Tudor, 8 Pick.
206 ; Ward v. Hunter, 6 Taunt. 210 ; Jones v. Moore, 5
Binney, 573.

April term
1834.

SHAW C. J. delivered the opinion of the Court. There
is now no class of cases brought before the Court, attended
with greater difficulties than those which involve the true con-
struction of the statute of limitations. Although this statute
was adopted at a comparatively recent period, in this common-
wealth, yet being in nearly or precisely the same terms with
the St. 21 Jac. 1, c. 16, the judicial constructions put upon
that statute by the English courts, have ever been freely re-
sorted to as the safest guides in the exposition of the various
provisions of our own statute. But so various have been the
views of the nature and purposes of this statute, which have at
different times prevailed, both in England and this country, that
the decisions are now found to be in great perplexity, and indeed
it is quite impossible wholly to reconcile them. In England it
has been attempted to remove some of the difficulties with
which the subject has become entangled by conflicting decis-
ions, by St. 9 Geo. 4, c. 14, (Lord Tenterden's Act,) by
which it is, among other things, enacted, that no acknowledg-

ment or promise by words only shall be deemed sufficient evidence of a new or continuing contract, whereby to take a case out of the operation of the statute, unless such acknowledgment or promise be contained in some writing to be signed by the party chargeable thereby. This enactment will probably remove some of the difficulties which have surrounded the subject ; because, although the statute does not attempt to define, what species or form of acknowledgment shall be sufficient to found a new promise, yet when parties are compelled to rely upon written acknowledgments, framed for the express purpose of renewing and continuing a promise which has expired, or is about expiring, such acknowledgment may reasonably be expected to be so definite in its reference to the debt, security, or promise intended to be continued in force, and so precise and explicit in its terms of acknowledgment, as to dispel much of the obscurity, which has surrounded other cases, arising upon loose, indefinite and unguarded verbal admissions. In the state of perplexity in which the law still remains in this country, I consider that the Court are called upon to proceed with extreme caution in deciding each particular case, to select among conflicting authorities, those which appear to be best supported by principle, lest by attempting to proceed upon new and plausible grounds to extricate ourselves from present embarrassments, we may go counter to established principles, and thus increase instead of removing existing difficulties.

Before considering the effect of the statute of limitations, it is proper to inquire what the nature of the contract is, to which it is proposed to apply it in the present case, and the relations in which the parties stand to each other.

The note is the joint and several promise of the three makers, who were all equally responsible to the promisee by force of their original contract ; for, although one was designated as principal, and the others as sureties, this designation is rather intended to indicate the relation, in which the promisors stand to each other, than to affect their obligation to the promisee. It is intended to enable the surety to have his remedy over, if called on to pay, and to protect him from a claim for contribution, if the payment is made by the principal.

33 *

The promisors were never partners, except so far as the signing of this joint note made them so. No question therefore can arise, as to the effect of the acknowledgment of one, to bind others, before and after dissolution of partnership ; a question which has had much influence in other cases. Here the interest was paid annually at the expiration of each year, up to the one next preceding the time at which the principal failed ; it was paid, therefore, long before any question could be supposed to arise, respecting the effect of the statute of limitations to bar the holder of the remedy, and may be considered as paid in the ordinary course of business, so far as it may be deemed the ordinary course of business to continue the payment of interest periodically, on a note overdue.

At all events, we must consider the payments as made in good faith, that is, with the plain and direct purpose of satisfying the interest due to the holder, and not for the purpose of obviating the effect of the statute, and making evidence, to establish the note as a continuing promise.

The Court are of opinion, in the present case, that the statute of limitations does not afford a good defence to the present action. In stating the grounds of this opinion, it is not my intention to review the numerous cases, cited in the full and elaborate argument of the cause at the bar, but simply to state the grounds of the opinion in this precise case. And considering the difficulties of the general subject, I must beg to be considered as giving no opinion upon many of the questions, incidentally discussed by way of analogy and illustration, and reserve the unrestrained right of reconsidering those questions, upon their particular merits, as they shall occur.

The general rule, as I now consider it settled, is, that to avoid the operation of the statute, it must be shown that the defendant promised within six years next before the commencement of the suit, and if it appear that more than six years have elapsed since the making of the original promise, or since the cause of action thereon accrued, it must appear that the defendant has made a new promise to pay, within the six years. Such promise may be express or implied, and a jury will be authorized, and it will be their duty, to infer such promise from a clear, unconditional and unqualified admission of the existence

of the debt, at the time of such admission, if unaccompanied with any refusal to pay, or any declarations indicative of an intention to insist on the statute of limitations as a bar ; and it will be the duty of the jury, in like manner, to infer such new premise from a part-payment of the debt within the six years, either of principal or interest, such payment of part being of itself an unequivocal admission of the continuing existence of the balance of the debt, and forming a new point, from which the statute term will begin to run.  *Bangs* v. *Hall*, 2 Pick. 368 ; *Hunt* v. *Bridgham*, 2 Pick. 581.

To this extent the law seems clearly settled ; but the question is, whether an acknowledgment or payment by one of several partners or joint debtors, can take the debt out of the statute, as to others ; a case which has been much doubted and controverted.

In *White* v. *Hale*, 3 Pick. 291, the point was expressly ruled, that an acknowledgment by one of several joint debtors, is sufficient to take the case out of the statute, as against all. But this case was decided before many of the late cases and discussions on the subject ; the authorities were not fully reviewed ; and though in ordinary cases such an authority would seem quite decisive, yet perhaps under the very peculiar circumstances in which this question now stands, the Court might still be inclined to reconsider it, as a question not definitively settled.  But we think a regular payment of annual interest, for a series of years, before any question of the operation of the statute could arise, by the principal debtor, upon a plain promissory note given originally for a loan of money, such payment being made by the party from whom payment would be expected, and in the ordinary course of business, stands upon a very different footing from that of a mere verbal acknowledgment.

And we consider it a material circumstance, that the payment was made before the statute took effect, and do not mean to give any opinion, as to the effect of payment of interest or principal by one, to affect the liability of others, after the parties are in fact exonerated by lapse of time and the operation of the statute.  There is an obvious difference between the effect of a payment within the term, which shall *continue* an

existing liability in force, and such payment made after the liability is barred, to *revive* and create a new liability.

The case of *Whitcomb* v. *Whiting*, 2 Doug. 652, is the foundation of the principle, since frequently acted on, that the acknowledgment of one binds all. I am aware' that this case has been doubted, and I therefore do not cite it as an authority, except so far as it has been corroborated by the cases in which it has been called in question, as an authority for the general doctrine of the binding effect of an acknowledgment. The case was like the one at bar in this respect, that the operation of the statute as to all, was avoided, by proof of payment of interest by one. The court held that that was sufficient to take the case out of the statute, there being no suggestion of collusion. Lord *Mansfield*, in giving the opinion of the Court, went further than the decision of the case required, and stated that an admission by one was an admission by all. The last remark was no part of the case decided, and it is this which has been doubted. Another observation made by the same eminent judge, points to the distinction between the fact of a payment, and a mere verbal acknowledgment. Payment by one is a payment for all, and enures to the benefit of all.

*Brandram* v. *Wharton*, 1 Barn. & Ald. 463, is one of the modern cases, in which the authority of *Whitcomb* v. *Whiting* was questioned, and indeed has been relied upon as the case in which the latter has been overruled. In *Brandram* v. *Wharton*, Lord *Ellenborough* alludes to *Whitcomb* v. *Whiting*, as the case with which this doctrine,of rebutting the statute, by an acknowledgment, other than that of the party himself, began. " By that decision," says he, " where however there was an express acknowledgment by the actual payment of a part of the debt, by one of the *parties liable*, I am bound." He then comments upon that case as an authority for the general principle of an acknowledgment being sufficient, and certainly doubts it, and gives strong reasons against it, and declares a disinclination to go beyond that case.

In *Jackson* v. *Fairbank*, 2 H. Bl. 340, it had been held, that a part-payment made by the assignees of one party, who had become bankrupt, would be a payment sufficient to avoid

the operation of the statute, as to other parties.  Lord *Ellenborough.* in citing it in *Brandram* v. *Wharton*, speaks of it with disapprobation, and says that it wanted one material circumstance that existed in *Whitcomb* v. *Whiting*, for in the latter case, the party who revived the debt by his acknowledgment, became liable to contribute to it, whereas in the case of assignees, the acknowledgment, besides being a constructive one, was made by parties who never could be called on for contribution.  *Bayley* J. relies upon the same circumstance, and says the cases cited of *Whitcomb* v. *Whiting* and *Wood* v. *Braddick* 1 Taunt. 104, go upon the principle, that the party who was jointly liable, made the acknowledgment against his own interest.

The authority of *Whitcomb* v. *Whiting* was again considerably discussed in the case of *Atkins* v. *Tredgold*, 2 Barn. & Cressw. 23.  It was an action against the executors of a testator who had been dead eleven years.  The testator was a surety, and father of the surviving promisor, and the latter was executor.  He paid interest within six years.  At the trial, it was left to the jury to find, whether he paid on his own account as promisor, or as the executor of his father.  The jury found that he had paid on his own account.  The court held, that this was not sufficient to take the case out of the statute of limitations, as against the executors of the father. *Abbott* C. J. distinguished it from the case of *Whitcomb* v. *Whiting*, by saying that in that case, the payment was by one of several originally liable.  And *Bayley* J. says, that case is distinguishable from the present in two particulars ; 1. here the statute appears to have attached before the payment was made by Robert Tredgold, the executor, and therefore John Tredgold, being at that time protected, could not be subjected to any new obligation by the act of Robert ; and 2. the parties sought to be charged in this action, by means of an implied promise, are not those originally liable, as was the case of *Whitcomb* v. *Whiting*.

Now in the case under consideration, both these circumstances are the other way, so that the case of *Atkins* v. *Tredgold* is not an authority against the view we take, nor against the authority of *Whitcomb* v. *Whiting*, so far as it ap-

plies to the present case. In the case at bar, the payment was made before the statute attached ; and it was made by one of the parties originally liable, and who by this payment continued the contract in force for the extènded perıod, as well against himself, as against the other parties liable.

But the subject again came before the court, in a more recent case, *Perham* v. *Raynal*, 2 Bingh. 304, in which it was held, that an acknowledgment within six years, by one of the joint makers of a promissory note, will revive the debt against the other, although he has made no acknowledgment, and only signed the note as surety. It does not appear by the brief statement of the facts in this case, whether at the time of the promise relied upon, the statute had attached upon the note or not ; nor do the court seem to rely upon that distinction in deciding the case. *Best* C. J., in commenting upon the statute, and saying that from the words of the statute one might be led to conclude, that in no instance could a remedy for debt be had after six years, adds, but that construction cannot be adopted, because if it were, the party might elude paying the principal, although he had paid interest for six years. He puts it upon the ground, that it is not a new contract, but the revival or continuance of an existing contract, and upon the rule of evidence, that in respect to a joint interest or joint contract, the act or declaration of one is binding upon all. In this case the decision in *Whitcomb* v. *Whiting* was considered as a good authority.

This case is directly in point, and in my judgment goes somewhat further than the principle involved in the case at bar, inasmuch as it was the case of an acknowledgment, and not of an actual payment.

But a more recent case is still more directly in point, that of *Burleigh* v. *Stott*, 8 Barn. & Cressw. 36, decided as late as Easter term 1828. To an action upon a joint and several promissory note of Thomas Burleigh and Thomas Stott to Robert Burleigh, Stott being a mere surety, brought by the executor of Robert Burleigh against the administrator of Stott, the statute of limitations was pleaded. It appeared that Thomas Burleigh had paid the interest for two years, and made a payment on account of the principal, in the lifetime of the par-

ties, and that the last payment was made within six years next before the commencement of the suit. The opinion was delivered by Lord *Tenterden*, that the plaintiff was entitled to recover. He says, "I quite agree with the late decisions, which have established, that in order to satisfy the statute of limitations, there must be evidence of a promise to pay within six years. But I think there was sufficient evidence in this case, of a promise by the intestate within six years, to pay jointly and severally, according to the form of the note." *Bayley* J. added, "I consider this as a joint and several promissory note, and I think that the part-payment by one operates in point of legal effect as a new promise, by all and each of the promisors, to pay according to the nature of the instrument."

Such was the state of the law, upon judicial decisions, at the time when Lord *Tenterden's* act was passed on May 9, 1828.

By this statute already cited, it was enacted that no promise or acknowledgment should be effectual, unless made in writing and signed by the party chargeable thereby, but with this *proviso*, that nothing therein contained should alter, or take away or lessen the effect of any *payment* of any principal or interest, by any person whatever.

It is remarkable, that this act, as it passed, varied essentially from the original bill, in which it stood thus : — that where there shall be two or more joint contractors, or executors or administrators of any joint contractor, no such joint contractor, executor, &c. shall lose the benefit of the said enactments (the statutes of limitation) or either of them, so . as to be chargeable in respect or by reason of any acknowledgment or promise made by any other or others of them, *or by any payment made by any other or others of them, unless such payment shall be proved to have been made, with his or their privity or concert, &c.* These words, requiring proof that such payment was made with the privity and concert of the others, were struck out, and not adopted as part of the act.

The effect of the proviso, in this very important and well considered act, is to leave the legal effect of a *payment*, made *ny any person,* in taking a case out of the operation of the

statute of limitations, just as it was before. Wheie therefore this effect is to be produced by a mere promise or acknowledgment, the statute not only requires that such acknowledgment or promise should be in writing, but it further requires that such written instrument should be signed by each party to be charged thereby, which will effectually preclude the revival of a promise by one against any other than himself, by an acknowledgment. But where the same effect is to be established by the act of payment, of principal or interest, there the law stands as it did before ; and it being shown by the cases cited, that a payment by one jointly liable, would take the case out of the statute as to others jointly liable, before the statute, the law is the same still.

This statute is of no other force or importance here, than to show what was the history and state of the law on this subject, before the statute, and how it was understood by eminent jurists. In this respect it is important, as indicating the legal effect of a payment, by one joint debtor or promisor, in continuing a contract in force and preventing the operation of the statute, in regard to others.

In a note, in a late treatise, Wilkinson on Limitations, 87, I find a brief report of a case said to have been decided by Lord *Tenterden*, at nisi prius, after the passing of the statute, in August 1829, *Baldwin v. Clarke*, in which it was held, that payment by the executors of one of two joint makers of a promissory note, would bind the other maker. I have not been able to find a more extended report of this case. It is important as having been decided by Lord *Tenterden* since the act, and. if correctly reported, it goes to the whole extent of the doctrine relied upon in the present case.

One other case has occurred since the statute, which I had not examined before drawing up this opinion, which appears to me most fully and entirely to support the views already taken, especially as to the effect of payment. *Wyatt v. Hodson*, 8 Bingh. 309, decided as lately as Trinity term 1832 The point decided is, that payment of interest by one of sev eral joint contractors, takes a debt out of the statute of limita tions as against all. This also was an action upon a joint and several promissory note, which one had made as surety with

his brother. *Tindal* C. J. gives the reasons why the case of payment should be distinguished from the case of acknowledgment, by the statute leaving a payment to its legal operation, to bind all the joint promisors, and confining the effect of an acknowledgment, to him who makes it; because the payment of principal or interest stands on a different footing from the making of promises, which are often rash, or ill-interpreted, while money is not usually paid without deliberation; and payment is an unequivocal act, so little liable to misconstruction as not to be open to the objection of an ordinary acknowledgment. The other members of the Court (*Park*, *Gould* and *Alderson*) concurred generally, considering *Whitcomb* v. *Whiting* as a governing authority, notwithstanding some observations thrown out against it, and as being recognised and confirmed, by *Burleigh* v. *Stott*, and *Perham* v. *Raynal*. This case is precisely in point, and we think is supported by a great weight of authority and founded upon sound principles of law.

We have not overlooked the case of *Bell* v. *Morrison*, in the Supreme Court of the United States. 1 Peters, 351.

That case however is extremely distinguishable from the present. It was a case of a mere acknowledgment, by a part ner, after the dissolution of a partnership, after the statute of limitations had attached, so that the other partners were already discharged by the operation of the statute, and where the account was wholly unliquidated. It was a case also to some extent influenced by the local laws of Kentucky. And the court state that the question was not, as to the authority of a partner after the dissolution to adjust an admitted and subsisting debt; meaning, admitted by the whole partnership or unbarred by the statute; but whether he can by his sole act, after the action is barred by lapse of time, revive it as against all the partners, without any new authority communicated to him for that purpose. The question in the case before us, differs in every essential particular. It is the case of a joint promise, for a precise, liquidated sum, where payment of part is *de facto* an admission of the existence of the debt for the balance; it is the case of a payment of interest, before the statute attached, and before the debt was barred; and in all these par-

Sigourney<br>*v.*<br>Drury.

ticulars, considered essential in *Bell* v. *Morrison*, is a case wholly distinguishable in principle.

Some reliance was placed in the argument, upon the fact, that the defendant who pleads in the present case, was a surety, and the consideration of hardship was strongly pressed upon the Court. We have already remarked, that on a joint and several note, as to the promisee, all are principals. The case of *Hunt* v. *Bridgham* in Massachusetts, and most of the English cases cited, were those of sureties, and yet that circumstance was considered as making no difference upon the question of legal liability. And why should it ? · If the holder gives no new credit to the principal, it is always in the power of the surety to inquire and ascertain whether the debt is paid, and if not satisfied to let the note remain unpaid, he may pay it, and call on his principal for reimbursement. But if he is content to lie by, and make no inquiry, where is the hardship in calling upon him to perform the contract which he has made ? When a note is given with a surety, it indicates that the promisee wishes and means to have security ; it indicates, that it is intended for the accommodation of the principal ; and with a view to such accommodation, it may reasonably be expected that it will continue beyond the particular time stipulated ; and the law binds all parties till payment. If the surety does not mean to remain responsible beyond the precise time limited, he may put his suretiship into the form of an indorsement, and then if the note is not paid at maturity, he will know it or be discharged.

On the whole, we are of opinion, that the facts agreed by the parties are sufficient to maintain the issue for the plaintiff, and therefore, according to the agreement of the parties, there must be a judgment for the plaintiff.