.Casey, Cb. J.,
delivered the opinion of the court:
The claimant sets forth in his petition that on the 28th day of April, 1849, one Daniel Sahara,ns entered into an article of agreement with James Collier, then collector of customs at the port of San Francisco, California, for a large warehouse for the use of the United States in that city, on a site to be selected by the collector. The building was to. be finished and ready for occupancy by the 1st of September, 1850, at a rental to be fixed by the collector and approved by the Secretary of the Treasury. This' contract was ratified by William M. Meredith, Secretary of the Treasury.
These agreements were afterwards changed and modified by T. Butler King, the successor of Mr. Collier, and by Mr. Corwin, the Secretary of the Treasury succeeding Mr. Meredith. The rent was fixed at fifteen hundred dollars per month, and the lease limited to ten years.
The building was erected and accepted by the government and its occupancy commenced on the 14th of January, 1851.
The claimant, Cross, had in the meantime advanced a large amount of funds to Saflarans to enable him to erect the building and' carry out his contract with the United States. Yarious other parties had also acquired interests in the contract and lease. Saffarans and all the other parties, either by themselves or their agents, transferred their several interests in the contract and in the warehouse to the claimant, Alexander Cross. The instruments, however, by which these transfers were effected were more or less informal, but no claim has ever been set up in any of these parties, or any person other than Cross claiming through them. The United States' took possession of the warehouse from Cross and paid him the agreed rent of $1,500 per month from the 14th of January, 1851, until the 13th day of August, 1853, at which time the collector of the port at San Francisco, under instructions from the Secretary of the Treasury, notified the claimant that the property would not be occupied or held any longer by the United States, nor would any further rent be paid him for the same. The United States paid the rent up to the day that they vacated the premises, but refused to pay any further.
On the 15th day of November, 1856, Cross filed his petition in this court, alleging that there was due to him the rent of such *275 premises for thirty-nine months ending upon the 14th of November, 1856.
The canse was heard in this court before its reorganization; and on the 24th of January, 1859, there was an adverse report against his right to recover, upon the ground that the assignments and transfers under which he claimed the lease and premises were irregular and did not show the legal right to either the lease or the reversion in the premises to be in himself. And this decision was accordingly reported to Congress.
And while so pending Congress, on the 2d of July, 1864, passed the following joint resolution:
“JOINT RESOLUTION for the relief of Alexander Cross.
“Whereas Alexander Cross heretofore filed his petition in the Court of Claims of the United States, praying relief on account of certain rents alleged to be due from the United States to him as assignee of one Daniel Saffarans, by virtue of a certain alleged contract of lease between the said Daniel Saffarans (who is now deceased) and the United States; and whereas the said Court of Claims, on the twenty-fourth of January, eighteen hundred and fifty-nine, rendered a decision adverse to the prayer of said petition, on the sole ground of an alleged technical defect in the assignment of said lease from the said Daniel Saffarans to the said petitioner: Now, therefore,
uBe it resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That the said cause be remanded to said Court of Claims for a further hearing, upon the testimony heretofore filed therein, and such further tes: timony as either party may take and file pursuant to the rules of said court; and if, upon the further hearing of said cause, it shall appear that the said petitioner is the equitable owner of said lease, and in justice and equity entitled to the rents (if any) due thereon from the United States,, the said court shall be authorized to render judgment therefor in his favor, notwithstanding any technical defect in the assignment of said lease: Provided, That no money shall be paid out of the treasury upon any judgment which may be .rendered in favor of the petitioner in said cause, until he shall have filed with the Secretary of the Treasury a bond, with ample security, in such sum as will fully indemnify the United States against any demand which may be set up and established by or on behalf of the heirs or repré- *276 sentatives of the said Daniel Saffarans, deceased, under or by virtue of said contract or lease.”
The claimant immediately thereafter refiled the case in this court, and claimed the rent of said premises up to the 14th day of November, 1856. This cause was afterwards heard before the court, and on the 26th day of March, A. D. 1866 a judgment was rendered in his favor for the sum of forty-three thousand six hundred and seven dollars and sixty-three cents, ($43,607 63.) This judgment has been received by him.
The claimant then, on the 3lst day of May, A. D. 1866, filed the petition, in the case at bar, claiming the balance of the monthly rents accruing from and after the 14th day of November, A. D. 1856, till the 15th day of January, 1861 — being-fifty months at fifteen hundred per month, amounting to the sum of seventy-five thousand dollars — with credits for various sums received as rent, amounting to five thousand five hundred and fifteen dollars and ninety-nine cents, and claiming a judgment for the sum of $69,484 01. The Attorney General, on behalf of the United States, has interposed a plea of the statute of limitations, as contained in the .tenth section of the act of 3d March, 1863, to all that part of the claim set up for the monthly rent, falling due and payable more than six years before the filing of this petition. To this plea the claimant’s counsel has filed a special replication, setting forth the joint resolution hereinbefore recited. And he alleges that the action first accrued after the passage of the said joint resolution, and that the action was brought within two years after the passage of the same, and before the claim or any x>art of it was barred .by virtue of the act recited in the plea. To this special replication the Attorney General-has demurred.' And the claimant has joined in the demurrer.
This raises the question whether the claim, or any part of it, is barred by the statute of limitations. And this again dex>ends on when the claim first accrued. The claimant insists that his case was not cognizable by the Court of Claims until after the' passage of the joint resolution of the 2d July, 1864. The Attorney General, on the other hand, contends that the claim firstf accrued by the breach of the contract in 1853; or at all events that it accrued as the several monthly payments under the lease fell due. And that all such as accrued more than six years prior to March 3,1863, are within the first proviso to the *277 said section, and'suit must be brought within three years after the passage of said act. And that for the residue of the claim, the six years under the enacting clause of the act commenced to run from and after the day on which the respective monthly installments fell due and were payable. That the claim accrues solely under the contract, and not upon the joint resolution of Congress.-
When the case was first before this court, and ivas by it decided adversely and reported to Congress, that result, as well as the subsequent action of .Congress in the premises, was predicated upon the fact that Cross was the equitable and beneficial owner of the lease and of the demised premises, but that he had not shown that clear legal title that would enable him to maintain a suit in his own name. But there was at no time any legal obstacle which prevented him maintaining a suit in this court in the -name of Saffarans, for his use. These transfers were prior to the Act February 26, 1863, (10 Stat., 170,) forbidding assignments of claims against the United States, and making such transfers, upon whatever considerations founded, absolutely null and void, and therefore not interdicted by law. See the case of Frémont for use of Jackson, (2 C. Cls. R., 461; lid.,260.) The assignments in this case being informal and incomplete, but being accompanied with proof of payment of the consideration, and acquiescence in his possession and control of the premises by the assignors, and of his receipt of the rents under the lease, would have been at least sufficient evidence of such equitable right to the claim in suit as would have enabled him to have prosecuted it in the name of the legal party for his own use and benefit. To maintain a suit upon or in affirmance of a lease made with another, to recover the rents due under it, he must necessarily rise the name of the lessor. No one at common law could maintain an action in his own name upon such an instrument made with another and in his name, whatever might be the solemnity and formality of the transfer. To enable him tó do so would in any case require a statutory provision — an enabling law. This is what the joint resolution of July 2,1864, proposed to do, and was intended to accomplish. It gave him no new cause of action that did not exist before. It was not intended to impose any other or different obligations upon the United States, except such as arose out of the contract with Saffarans, and the trans *278 actions consequent upon it. The rights and obligations of the parties wore to be measured and determined by that alone. And the effect of the act was to send the case back to the court under its enlarged powers and jurisdiction, free from the technical objection of want of proper party claimant, if the court should be satisfied of his equitable right to the lease and premises. This was not the old case that had been tried before; it was essentially a new case. Hence Congress prescribes that-the testimony taken on the former trial is to be received on the succeeding hearing.
A new petition was then filed in conformity with this joint resolution, and the altered powers and functions of this court. When the cause was thus reinstated and legislative authority given to prosecute it in the name of the claimant, all the additional rents claimed in this suit had accrued. Their omission may have an important bearing in the final determination of the case. It may be a question worth considering, whether the joint resolution did not relate specifically to the suit then reinstated and ordered to be retried; and whether, having been' used for that purpose, and its benefits and fruits realized, its vitality was not at an end. All we decide now is, that-the act in question conferred no new cause or right of action, and was in no just sense the foundation of the claim sought to be recovered in this case; but that the action is and necessarily must be founded upon the lease. The joint resolution adds to this,no new promise, removes no bar to the suit, except that of enabling the claimant to avoid the effect of a former adverse decision, by giving him a new trial, and authorizing him to prosecute the case in his own name.
The want of evidence necessary to support a title is not a disability to sue within the meaning of the statute of limitations. (McIver v. Ragan, 2 Wheat., 25.)
Nor can the court ingraft on a statute of limitations an exception not found therein, however reasonable and just it may be. (Bank of Alabama v. Dalton, 9 How., 522.)
In the case in 2 Wheaton, Chief Justice Marshall says: “It has never been determined that the impossibility of bringing a case to a successful issue, from causes of uncertain duration, though created by the legislature, shall take a case out of the operation of the act of limitations unless the legislature shall so declare it.” (See, also, Hudson v. Carey, 11 S. R., 10.)
*279 The claimant’s replication to the plea of the statute of limitations proceeds upon the assumption that the case was not cognizable by the Court of Claims until the passage of the joint resolution of July 2, 1864, and that the statute of limitations only commences to run against him from that date; or that it is in the nature of a new promise, or such acknowledgment of the debt as will take it out of the operation of the statute. But we have already said, that in oúr judgment the court had cognizance of the case before the passage of the resolution. Its purpose was to correct a mistake in the name of the party — to waive the legal, technical bar — to supply the failure of proof, and to give the claimant a rehearing of the case decided against him, nntrammeled by the formal objections interposed before. For all that we can see he might at any time, after the adverse decision against him, without this legislative authority, have brought a suit in the name of Saf-farans, or his representative, and recovered whatever was due under the lease. If the resolution first gave the right to sue, the position of claimant would be clearly right. But it does not. The Supreme Court of Pennsylvania, in the case of Leasure vs. Mahoning Township, (8 Watts, 561,) held that the statute only commenced to run against a person in favor of a municipal corporation from the date of a special legislative act enabling him to sue for the debt. But in that case the right to sue was first given by the act. Here the right to sue was complete before. The act only related to the person in whose name it should be prosecuted, and to the proof of ownership required to maintain the action.
A new promise, or what is equivalent to it, made by Congress would undoubtedly take the ease out of the statute. But that promise must be clear and distinct.
An acknowledgment of the debt, to imply such a promise, must be- unqualified and unconditional, and show positively that the debt is due in whole or in part. (Wetzell v. Bussard, 11 Wheat., 309, Bell v. Morrison, 1 Peters, 351.) An acknowledgment of the original justice of the claim will not take the case out of the statute. The acknowledgment must go to the fact that the debt is still due. (Clementson v. Williams, 8 Cranch, 72; Bailey v. Crane, 21 Pick., 323; Sands v. Gelston, 15 John., 511; Purdy v. Austin, 3 Wend., 187.)
There is nothing of the kind in this joint resolution; nothing *280 wbicb can be construed into either an acknowledgment of the debt or a promise to pay.
If these views are correct, all the rents claimed in this case falling* due more than six years before the filing of this petition are barred by the statute of limitations. And there is nothing upon this record which in our opinion takes them out of its operation. This disposes of all the rents falling due prior to the 14th June, i860. And for these as claimed the demurrer is sustained, and the cause will proceed to hearing for the balance of the claim.
Loking, J. I dissent from the opinion read. If the claimant has any legal claim, I think it arose on the resolution of 1864, and had no existence before. Therefore I think the replication good, and that the demurrer to it should be overruled.