JUDGE HARDIN
delivered the following as ms dissenting opinion:
Through the deference which is due from me to the other members of this court, I interpose my dissent from *383 their opinion in this case with reluctance, and would only suggest the fact that I do so without expressing the reasons of my non-concurrence in said opinion, if I did not regard the principal points on which I differ with the majority of the court of vital importance in the application of the statute of limitations as a legal defense.
The distinction taken by the court between the re-acknowledgment of an obligation, as preserving or extending a subsisting liability, so as to make the statute begin to run from the date of such acknowledgment only instead of that of the original contract, and a new promise after a statutory bar has occurred, founded on the original consideration, seems to me to be correct. And as the indorsement of credit on the note for twenty-three dollars, from which the plaintiff sought to deduce a re-acknowledgment of the debt, appears to have been made before the statutory bar had become complete, if I regarded that fact as equivalent to an express admission of a liability for the residue of the original debt, I would concur in the conclusion that the action was properly brought, and that the judgment was sustained; although such evidence would have been insufficient to prove a new promise, which could be enforced as the foundation of an action. The true ground of this distinction is that an obligor, by re - acknowledging the written contract by which he is already bound, virtually contracts again in the language of the writing, as if its stipulations were then made or the writing then delivered; while in the case of a new promise, founded merely on the consideration of a contract which has ceased to be obligatory, the evidence must not only show a recognition of the old liability, but prove the terms of a new agreement.
But the essential inquiry is, does the mere indorsement by the payee of a promissory note of a credit thereon, *384 made before the debt is barred by limitation, unaided by any other explanatory evidence, import an acknowledgment of the debt so unambiguous, direct, and certain as to authorize the judicial conclusion not only that the partial payment was made by the obligor, but that in doing so he recognized and intended to admit his liability to pay the remainder of the original demand? I maintain that it does not, and with the concession too that the indorsement, though made by the payee, is not wholly incompetent evidence, if made, as in this case, without any apparent motive for fabricating it. As a credit so indorsed is for the benefit of the obligor, and apparently against the interest of the payee, it may be regarded as prima facie evidence of the partial payment it purports to prove.
But to go further, and assume from the fact thus presumptively shown that the obligor in making the payment meant thereby to admit that the balance of the debt remained due and unpaid, is in my opinion an unauthorized deduction from the fact — a conclusion not sustained by any authority which this court has heretofore recognized, and a dangerous precedent.
In the argument of this case, as well as in the opinion of the majority of the court, reference is made to the decisions of the English courts on this subject. But as early as the case of Bell v. Howland’s administrator, Hardin, 301, this court dissented from the then current of those decisions, holding that many of them had gone to unwarrantable lengths in evading the statute, and that some of them amounted to a total disregard of its provisions. The court said: “ These decisions of the English courts being only their construction of their own statute, we are free to declare we do not consider them as obligatory upon us in giving a construction to our statute, although similar in its provisions to' theirs ; and that, so *385 far as they have gone upon nice refinements for the purpose of evading the statute, they must be disregarded.” Subsequently the English courts themselves reviewed and condemned their former adjudications upon their statute of limitations A’Court v. Cross, 3 Bingham, 329); and in 1828 the British Parliament, as if to effectually correct an erroneous current of adjudication, enacted that “no indorsement or memorandum of any payment, written or made upon any promissory note, hill of exchange, or other writing, by or on behalf of the party to whom such payment shall be made, shall be deemed sufficient proof of such payment, so as to take the case out of the operation of the said statutes.” (Angell on Limitation, 259.)
In this country the precise legal effect of a partial payment of a demand, with reference to the obligor’s liability for the residue, is not distinctly defined; but I do not think the authorities go further than to recognize it as competent evidence of a subsisting debt, to be considered with other circumstances conducing to prove an explicit acknowledgment of the debt. It is difficult to perceive how more can he certainly inferred from it than that the sum paid was owing upon the debt. Admitting that it is so far conclusive, argument or illustration can scarcely be necessary to prove that it is not tantamount to an express acknowledgment of the residue of the demand; for a debtor might, in a variety of cases, pay a given sum without intending to admit an indebtedness for more, and notwithstanding the written evidence of his original agreement, as in the case of a partial failure of consideration, or a previous payment, or discharge of part of the debt by a set-off or counter-claim. In many such cases payment may be made and accepted of a mere fraction of the original demand, and yet in satisfaction of all that is due upon it.
*386 But deducing from the partial payment, which is itself only presumptively established in this case, the strongest inference which it can reasonably authorize as to a subsisting liability beyond it, it is still but an inference by no means determinate or certain. This court, in the case of Harrison v. Hundley, 1 Bibb, 443, referring to the case of Bell v. Rowland’s administrator, supra, said: “The rule laid down in that opinion (drafted by Judge Trimble, then upon the bench) is clear and explicit, and seems to be at least as favorable to the creditor as any one which can be adopted to guard against the mischief the statute intended to remedy, and yet leave the party to pursue his original cause of action, sdepending on the original consideration. An express promise to pay, or an express acknowledgment of the debt, as a debt due at that time, coupled with the original consideration, must have been made within the time limited by the statute for bringing the action.”
Not only have these early decisions been consistently adhered to in more recent cases in this court, but the Supreme Court of the United States, in the case of Bell v. Morrison et al., prosecuted by a writ of error to the circuit court of the district of Kentucky (1 Peters, 351), held, in conformity with the established doctrine in this state, that “if there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay.” And after an elaborate and analytical review of the cases we have cited, and numerous other Kentucky decisions, that court said, “they evince a strong disposition in the courts of that state to restrict within very close limits every attempt to revive debts by implied promises *387 resulting from acknowledgments and other confessions by parol.”
An examination of the cases referred to shows that they differ from this in one essential particular, and in that they rest on grounds far more favorable to the creditor than the present case. In those cases the fact of acknowledgment was in some form directly proved, and not merely inferred from circumstantial evidence. In this case the assumed acknowledgment can only be presumed from the partial payment, which is itself but an inference of fact wholly dependent on secondary evidence; yet if the judgment be sustained, the presumption thus based on a presumption must have the verity of a fact unequivocally and expressly proved.
But I regard the indorsement on the note, which is the foundation of this whole presumptive structure, though competent, as insufficient to invest the assumed fact of payment with the force of conclusive proof.
Neither made by the obligor, nor shown to have been made at his request, the indorsement is only presumed to have been made, in consequence of a corresponding payment, and with the obligor’s privity; because, in the absence of any apparent motive for making it falsely, it seems at the time to have only been beneficial to him and not the obligee. But only on this supposition is the inference authorized. Upon others a contrary presumption may be indulged. The fact that the indorsement is now relied on as beneficial to the appellee proves that he may have had good reasons for so regarding it when he made it.' And it is not a far-fetched or unreasonable supposition that in many instances the holder of a note about to become barred by limitation would be interested in fabricating a credit upon it, if that act would operate to renew the debt, and postpone the statutory bar until witnesses *388 might die, or circumstances change which then rendered it inexpedient to sue.
Testing said indorsement therefore by the principles of law applicable to the case, I can not concur in the conclusion that a re-acknowledgment of the debt is thereby sufficiently proved to take the case out of the operation of the-statute of limitations. It is said that the alleged effect of the credit on the note was not denied by the appellants, but it appears to be sufficiently controverted by an amended answer, filed April 25,1867.
In the opinion of the majoiity of the court, the judgment against the administrator of John Hopkins, deceased, is. held to be prima facie evidence against the appellants “that it was for no more than was then due.” From this conclusion I also dissent. The asserted right of recovery against the appellants as the heirs of John Hopkins did not rest on any responsibility incurred by them as distributees of any estate which came to the administrator’s hands. But the plaintiffs sought to recover against them on the original cause of action against their ancestor, because of estate descended to them, as to which the administrator never was a fiduciary or trustee. No privity therefore ever existed between the administrator and the appellants respecting the alleged grounds of recovery in this case. What might have been the effect of the judgment upon the rights of the heirs, if it were shown that they received any estate through the hands of the administrator, is an ulterior question, not essentially important in this case; but I concede that in such a case the judgment would be at least prima facie evidence against the distributees. Such is, I think, a fair deduction from the cases of Richards’s adm’r v. Porter’s heirs, 6 Mon. 1, and Ewing’s heirs v. Handley’s ex’rs, 4 Littell, 347, referred to in the opinion of the court.
*389 But these cases not only recognize the well-established doctrine that a judgment is not evidence against persons who were not parties nor privies to it (Owings v. Beall, 3 Litt. 104; Clark v. Rodman, 5 J. J. Mar. 81; Banks, &c. v. Sharp, &c., 6 J. J. Mar. 180; Hume v. Langsden, &c., ibid. 255), but they seem to me authoritative of the point that in a suit against the heir, to whom estate has only come by descent or devise from the ancestor, a judgment against the personal representative on the same original cause of action is not evidence for any purpose. In Richard’s adm’r v. Porter’s heirs, 6 Monroe, supra, the case of Mason’s devisees v. Porter’s adm’rs, 1 Munford, 437, is referred to and approved; and in that case it was expressly held that a judgment “against the executors only is no proof against the devisees of land.”
I am of the opinion therefore that the judgment is erroneous, and should be reversed.