Mr. Justice Dayis
delivered the opinion of the court:
On the 23d of May, 1861, the firm of Burbank & Co. contracted with Major McKinstry, a United States quartermaster, to furnish transportation for all public stores from Saint Paul, Minnesota, to Fort Abercrombie, Dakota Territory, at the rate of $2.90 per one hundred pounds. The contract specified no period of duration, but the parties acted under and in pursuance of its terms, until the 19th of July, 1863. On that day, Captain Carling, an assistant quartermaster in charge of the department at Saint Paul, being obliged to send forward quartermaster and commissary stores to Fort Abercrombie, in a military *287 exigency, notified Burbank &' Co. to receive and transport them under the contract referred to. But Burbank & Co. declined to receive and transport the. goods under that contract, and refused to acknowledge its force and validity. Carling, being unable to obtain transportation from other parties, thereupon entered into a verbal agreement with them that they should transport such supplies, and should receive for their services-whatever price the same might be reasonably worth; which they did. Carling fixed the value thereof at $4.50 per one-hundred pounds; but the Quartermaster’s Department refused to allow or pay to Burbank & Co. any greater price than $2.90' per one hundred pounds, for the alleged reason that the obligations of the original contract had not been terminated by reasonable notice, and that' the services should justly and legally be deemed to have been -rendered thereunder, and at the agreed rate of compensation.
The services were performed and completed on the 31st of July, 1863. •
On the 1st of October, 1863, Burbank & Co. were paid by the quartermaster $6,393.72,-being a payment at the rate of $2.90 per one hundred pound,Sj- and leaving unpaid $3,516.21 which u the defendants then and there refused to pay, and it still remains unpaid,”
The petition was filed in the Court of Claims on the 26th of August, 1869, being more -than six years from the time the services were performed, and less than six years from the time of payment.
Upon these facts the Court of- Claims decided:
1st, That the claimants had a good and valid cause of action upon the parol agreement.
2d. That the claimants are nót barfed from maintaining this suit upon the facts set forth in the second finding under and within the true intent and meaning of the Act of March 3,1863, reorganizing the Court of Claims, “ and which declares that every claim against the United States shall be forever barred,, unless the petition setting forth- a -statement of the claim be filed in the court * * loithin six- years after the claim first accmed.” — (12 Stat. L., 765.)
The United States appeal and allege as error that the cause was barred by the statute of limitations, and that the Court of Claims should have so held.
*288 We think tlie Court of Claims erred iu deciding that the claimant was not barred by the provision in the act reorganizing that court. The claim accrued on the 31st of July, 1863, because the services were rendered at that time, and the petition was not filed until six years afterward. The claim was, therefore, barred by the statute, unless, in some way, taken out of it. It is insisted that this has been done by a payment of a portion of the demand within the six years, and this presents the only question for consideration.
This court has not adopted the rule of decision made at one time in England — (see Trueman v. Fenton, Cooper, 548; Quantock v. England, 5 Burrow, 2628; Yea v. Fouraker, 2 id., 1099) — and to some extent in this country, under which, by a constructive equity, judicial refinements came near to abolish the statute altogether. On the contrary, following the decisions of the English courts — (Dickinson v. Thompson, 2 Shower, 126; Andrews v. Brown, Precedents in Chancery, 385; Williams v. Gun, Fortesque, 117; Bland v. Hazelrig, 2 Ventors, 152; and Benyon v. Evylyn, A. D. 1664, Sir Orlando Bridgman’s Judgments, all referred to in Angelí on Limitations, pp. 18, 212, 5th edition, 1869) — made more immediately after the passage of the statute of James I, we have sought to give to it full effect. In 1814, Marshall, C. J., delivering the judgment of this court, declared — (Clementson v. Williams, 8 Cranch, 72) — that the statute of limitations was entitled to the same respect as 'other statutes, and should not be explained away. The same doctrine has been asserted in subsequent decisions. Bell v. Morrison, 1 Peters, 351; McCluny v. Silliman, 3 id., 270.)
It results from these cases that a promise to pay cannot be inferred from the mere fact of payment of part of a debt, there being nothing to raise a presumption that it was a payment on account of this debt. The principle on which part payment takes a case out of the statute is, that the party paying intended by it to acknowledge and admit the greater debt to be due. If it was not in the mind of the debtor to do this, then the statute, having begun to run, will not be stopped by reason of such payment. It is too plain for controversy that the payment in question was not intended as an acknowledgment of the demand sued for. Instead of being applicable to an admitted debt, it was in denial of the right to further payment. The sum paid was the exact amount due under the written agree *289 ment, and was in discharge oi'-tbe obligation imposed by it. That agreement was acknowledged, while the verbal arrangement made by the assistant quartermaster was repudiated. It is difficult to see how a payment in full of an admitted contract can be -converted into an acknowledgment of one which was denied.
The case of the claimant is in some of its aspects worthy of consideration, but as it was not filed in the Court of Claims until barred by the statute, we are not at liberty to discuss its merits.
The judgment of the Court of Claims is reversed, and the ■cause is remanded to that court, with.directions to dismiss the petition.