McIlvaine, J.
 

 On the trial in the Court of Common Pleas, the plaintiff offered testimony tending to prove, that, In the year 1865, the firm of Eeigley & Davis was doing: business as merchants and produce dealers, at New Lexington, Ohio; that the business of the firm was uuder the general management and control of James E. Davis, one of the members of the firm ; that the defendant, the other member, resided at Cincinnati, and occasionally visited their place of business; that, during the summer of 1865, the plaintiff:* was engaged in buying wool at said town;. that he kept his wool money on deposit with Eeigley &: Davis, and took in the wool purchased by him at their store, where the money was paid to the plaintiff’s customers by Davis, who also adjusted their accounts; that plaintiff* purchased wool, on commission, for Cone & Lickley, of Columbus, and that the firm of Eeigley & Davis received a. portion of his commissions for their services and the use of room; that the firm of Eeigley & Davis was dissolved in;
 
 *609
 
 September, 1865, and that plaintiff, about the same time, quit the purchasing of wool; that the firm of Eeigley & Davis was succeeded by the firm of Eeigley, Davis & Co., composed of the*partners of the old firm and oue Perry A.. Edington; that the new firm continued the same business, and was under the charge of Davis. No settlement was-shown to have been made between the plaintiff and Feigley & Davis before the dissolution of the firm. Davis died in August, 1866. The plaintiff also offered testimony to-show that after the dissolution of the firm of Eeigley & Davis, and both before and after the death of Davis, he-had in possession a statement, in the handwriting of Davis,, as follows:
 

 “February 15, 1866. Eeigley & Davis, to J. C. "Whitaker: Dr. To wool money, $200.”
 

 To the introduction of the testimony touching this statement, the defendant excepted. No testimony was offered, by the defendant.
 

 Thereupon the defendant asked the court to charge the¡ jury, that if they should find that Whitaker did have in. his possession a- paper writing in'these words: “February 15, 1866. Eeigley & Davis, to John C. Whitaker:. Dr. To wool money, $200;” which was written by Davis after the firm of Eeigley & Davis had been dissolved by the introduction of Edington, a new member, the same-can not be regarded, and is not evidence to be considered by the jury of an indebtedness to Whitaker and against Eeigley, which charge the court refused to give, but did charge that it was competent, but not conclusive, to charge the other party ; and further asked the court to charge the jury “ that if they should find that after the dissolution of th.e firm of Eeiglej’ & Davis, and Eeigley no longer a member of the firm, Davis made any acknowledgments, or admissions or statements, of an indebtedness of the late firm to the plaintiff, the evidence could not be regarded by them, as a late partner can not bind the old members of the firm by any admissions after the dissolution,” which the
 
 *610
 
 ■court refused to charge, but did charge the same was competent, but not conclusive.
 

 The bill of exceptions also shows, that, after verdict, the •defendant moved for a new trial, upon the ground (among others) that the court erred in refusing to charge the jury that said paper writing “was not evidence of an indebtedness of said firm to Whitaker, even if in the handwriting of one of the firm; and in charging that the same was an item of evidence to go to the jury, to be considered by them, and upon which they might render a verdict or not, .according as they might be of opinion that said paper writing was sufficient or insufficient, in connection with other testimony, upon which to found a verdict in favor of or against the plaintiff'.”
 

 The rulings of the court below mus tbe reviewed in the light of the whole case, as developed in the record. The principal question thus presented, is, whether or not the admission of a partner, made while engaged in the adjustment of unsettled partnership business, but after the dissolution of the firm, can be used as evidence to charge the •other partners in relation to such business;
 

 Reported eases upon this subject are in conflict, with a majority, perhaps, apparently in support of the negative of •the proposition. But when considered in the light of what we conceive to be the true rule, the weight of authority, •we think, is in favor of the affirmative.
 

 It can not be disputed that the implied authority of a .general partner to bind his copartners to any new engagement, contract, of promise, although within the scope of the partnership business, is absolutely revoked by the dissolution of the partnership.
 

 But it is nevertheless true, when not otherwise agreed upon, that an implied authority continues in each partner .after the dissolution to act for himself and his copartners in the matter of winding up and adjusting the business of •the firm; and while acting within the scope of such limited authority, we can see no reason why the several members of the firm should not be bound by the acts and ad
 
 *611
 
 ■missions of each other, as in other cases of agency. The maxim,
 
 qui facit per alium, fácil per se,
 
 should apply in its full force.
 

 Doubts may often arise in particular cases as to whether ■or not a particular act or admission falls within or without the scope of such limited authority. But it is quite clear to our minds that the settlement of mutual accounts, preexisting between the firm and its customers, and the adjustment and ascertainment of balauces on claims and demands in favor of and against the firm, are within the .scope of such agency.
 

 We do not think that a paper writing, made by a partner after dissolution of his firm, and purporting to be a statement of accounts between the firm and a stranger, or of a balance due him, would alone constitute even
 
 prima fcieie
 
 proof of indebtedness against the other partners. But with proof
 
 aliunde
 
 that an account was current between such per-~ son and the firm before and at the time of its dissolution, such, statement would be admissible as tending to prove the state of accounts between them at the date of the dissolution. Or, if proof be made of certain dealings between the firm .and a third person, unsettled at the time of the dissolution, then an act or admission made by a partner after the dissolution, if made in the matter of adjusting such business, is •competent to be given in evidence for the purpose of proving a claim founded on such dealings against all the partners.
 

 In
 
 Wood
 
 v. Braddock, 1 Taunton, 108, Mansfield, C. J., said: “Clearly the admission of a partner, made after the partnership has ceased, is not evidence to charge the other in any transaction which occurred since the separation,- but the power of partners, with respect to rights created pending the partnership, remains after the dissolution. Since it is clear that one partner can bind the other during all the partnership, upon what principle is it that the moment it is •dissolved, his account of their joint contracts should cease to be evidence?” And Heath, J., said: “Is it not a very clear proposition that when a partnership is dissolved, it is
 
 *612
 
 dissolved, not with regard to things past, but only with-regard to things future ?”
 

 Though it is not necessary in this case to approve, to the-full extent, the doctrine of
 
 Wood
 
 v.
 
 Braddock,
 
 it is nevertheless true that the rule of that case is fully approved by all the English common-law decisions, and is adhered to in many American eases. See
 
 Joslyn
 
 v.
 
 Smith,
 
 13 Vt. 353;
 
 Parker
 
 v.
 
 Merrill,
 
 6 Greenl. 41;
 
 Mann
 
 v.
 
 Locke,
 
 11 N. H. 246;
 
 Cady
 
 v.
 
 Shepherd,
 
 11 Pick. 400;
 
 Gay
 
 v.
 
 Bowen,
 
 8 Met. 100;
 
 Brewster
 
 v.
 
 Hardeman,
 
 Dudley, 138;
 
 Wilton
 
 v.
 
 McNeile,.
 
 4 Dowl. & Ry. 7;
 
 Pritchard
 
 v.
 
 Draper,
 
 1 Russ. & M. 191
 
 ; Whitcomb
 
 v.
 
 Whiting,
 
 2 Doug. 352;
 
 Jackson
 
 v.
 
 Fairbank,.
 
 2 H. Bl. 340;
 
 Shelton
 
 v.
 
 Cooke,
 
 3 Mumf. 191;
 
 Simpson
 
 v.
 
 Morrison,
 
 2 Bay, 533. See also
 
 Smith
 
 v.
 
 Walker,
 
 6 Johns. 267;
 
 Bridge
 
 v.
 
 Gray,
 
 14 Pick. 55; and
 
 Hackley
 
 v.
 
 Patrick, 3
 
 Johns. 536.
 

 It must be admitted, however, that the broad doctrine of
 
 Wood
 
 v.
 
 Braddock
 
 has been disapproved in many American cases, especially by the courts of New York, Kentucky, Illinois, Indiana, and Missouri; and also by the Supreme Court of the United States in
 
 Bell
 
 v.
 
 Morrison et al.,
 
 1 Pet. 351. But it will be observed that no well-considered ease, either in England and America, has denied that, in the absence of express stipulations to the contrary, an implied', 'authority after dissolution is continued in the several partners to wind up the unsettled affairs of the partnership.
 

 In
 
 Bell
 
 v.
 
 Morrison et al.,
 
 it is expressly declared that “ each partner may, therefore, bind the partnership by his-contract in the partnership business; but he can not bind it by any contract beyond those limits. A dissolution, however, puts an end to the authority.. By force of its-.terms it operates as a revocation of all power to create
 
 new contracts,
 
 and the right of the partner can extend no further than to settle the partnership concerns already existing, and to distribute the remaining funds. Even this-right may be qualified and restrained by the express delegation of the whole authority to one of the partners.”
 

 
 *613
 
 This case
 
 (Bell
 
 v.
 
 Morrison)
 
 is much relied on as ah ¡authority against the power of a partner, after dissolution, of the firm, to bind his copartners, by his act or admission, in any transaction whatever. The question decided arose •on a plea of the statute of limitations, and we think the -doctrine of the case is by no means as broad as that contended for. Justice Story, in delivering the opinion, said: •“The question is not as to the authority of a partner, after dissolution, to adjust an admitted and subsisting debt (we mean, admitted by the whole partnership, or unbarred by <the statute); but whether he can, by his sole act, after the action is barred by lapse of time, revive it as against all the partners, without any new authority communicated for that purpose. We think the proper resolution of this point depends upon another; that is, whether the acknowledgment or promise is deemed a mere continuation of the -original promise, or a
 
 new contract
 
 springing out of, and supported by, the original consideration. We think it is the latter.” And again, he says : “ The light in which we -are disposed to consider this question is, that after a dis.solution of a partnership no partner can
 
 create
 
 a cause of action against the other partners, except by a new authority communicated to him for that purpose..... When the statute of limitations has once run against a •debt, the cause of action against the partnership is gone. The acknowledgment, if it is to operate at all, is to create a new cause of. action, to revive a debt which is extinct.” 'There is nothing in this decision that conflicts with the rule we have stated. And it may be said that most of the cases relied upon as supporting a contrary doctrine arose in the same way, and were decided upon the principle, that an ac-knowledgment or promise to pay a debt, barred by statute •of limitations, does not revive the old debt, but creates a new one ; and hence it is, that we stated above that the decided weight of authority is, that a partner, after dissolution, to the extent that is necessary to settle pre-existing ■claims against the firm, may so exercise his authority as to bind all the partners; but never, without new authority
 
 *614
 
 from them, can he create a new cause of action against them.
 

 This court, in
 
 Palmer
 
 v.
 
 Dodge,
 
 4 Ohio St. 21, held that the dissolution of a partnership worked an absolute revocation of all implied authority in either of the partners k> bind the other to
 
 new engagements or promises
 
 made with persons having notice of the dissolution, although springing out of, and founded upon, the indebtedness of the firm; and in
 
 Myers et al.
 
 v.
 
 Standart et al,
 
 11 Ohio St. 29, it was held, that under an averment of due demand and notice of the dishonor of a bill of exchauge, drawn by a firm, the declarations of one of the partners made after dissolution (no notice, however, of the dissolution having been given to the payees), showing an acknowledgment of liability thereon, and a promise to pay the amount of the bill, were' admissible in an action against the other parties. But in each of these cases the doctrine is distinctly affirmed, that while the dissolution revokes the implied authority of each partner to incur
 
 new
 
 obligations for his fellows, it leaves upon each the duty, and continues to each the right of doing whatever is necessary to collect claims due the partnership, and to adjust, settle, and pay its debts. And it is said in
 
 Palmer
 
 v.
 
 Dodge,
 
 that “ this right of each of the-partners to participate in the settlement of its concerns,, can not be interfered with by his copartners without subjecting them to the controlling power of a court of equity,”'
 

 The ascertainment of the amount due to or from the-partnership on account of unsettled transactions, is a necessary step in the winding up of its affairs, and within the authority vested by implication in each partner after dissolution.
 

 We are, therefore, of opinion that the testimony objected' to by the plaintiff in error was competent, and that the-jury, having found from other testimony in the case, that,, at the date of the dissolution of the firm of Feigley & Davis, there were unsettled dealings between the plaintiff and'the firm, and that the paper referred to was made by Davis upon the settlement of such dealings, were author
 
 *615
 
 ized to find the amount due the plaintiff thereon from the admission of Davis so made.
 

 It may be proper to add that the proof in this ease did not strictly conform to the allegations in the petition, but as no objection has been made upon the ground of variance, we do not deem it our duty to consider that question.
 

 Judgment affirmed.