## TRAVERS v. JENNINGS.

1. Deposition—Seal of Officer.—The statute which requires the deposition of a witness taken by a notary public to "be by such officer sealed up" and forwarded to the court of trial, "and remain under his seal until opened in court" (18 Stat., 373), is not complied with by the mere sealing up of the deposition in an envelope, but the seal of the notary, or his name across the flap of the envelope, must appear, as an authentication of the package. Not so appearing in this case, the deposition was improperly received in evidence.

Before Aldrich, J., Greenville, November, 1892.

The opinion states the case upon the point decided.

*Mr. John R. Bellinger*, for appellants.

*Messrs. Earle, Orr & Mooney*, contra.

July 24, 1893. The opinion of the court was delivered by

Mr. Justice Pope. S. W. Travers, of Richmond, Virginia, dealing in commercial fertilizers, had shipped $1,702 of fertilizers to W. A. Jennings, J. S. Setzer, James A. Thomasson and John H. Austin, doing business as merchants in the city of Greenville, S. C., under the firm name of Jennings, Setzer & Co., in the early months of 1891, in pursuance of a contract for that purpose between such parties. Two notes, each for $851, maturing respectively the 1st and 15th days of December, 1891, were executed by such firm to the plaintiff, Travers, therefor. J. S. Setzer retired from said firm say on the 14th April, 1891, the remaining partners assuming all the liabilities of the firm of Jennings, Setzer & Co. The firm assumed the name of Jennings & Co. Default was made in the payment of the two notes as they matured respectively. An assignment was made by Jennings & Co.

The contention between the parties to this suit does not arise as to the debt represented by the two notes, but grows out of a palpable contradiction between the parties as to *the contract* in relation to the commercial fertilizers shipped by the plaintiff to the defendants; it being alleged by Travers, the plaintiff,

REP.]                    April Term, 1893.

that all moneys for which such fertilizers should be sold by the firm, and all notes and securities taken when sales were made on a credit, should be the property of Travers until said notes of the firm were fully paid, and that such evidences of indebtedness should be held by the said firm in trust, to collect and pay the same to Travers, the plaintiff, until the firm's two notes were paid, and that the terms of such contract were evidenced by a writing entered into on the 21st January, 1891, and signed by both the plaintiff and defendants. On the contrary, it was alleged by the members of the firm of Jennings & Co. that such paper writing was signed by Setzer, against the express agreement of the partners composing the firm of Jennings & Co. made with the plaintiff, which was well known by the plaintiff, and that the express agreement for such purchase was an out and out purchase on a credit as represented by the two notes due on 1st December and 15th December, 1891, respectively; and that such sale by the plaintiff was an unconditional one.

Testimony of S. W. Travers and E. Thomas Orgain, witnesses residing in Richmond, Virginia, was taken by commission in that city, under the act of the General Assembly of this State. 18 Stat., 373–375. When this testimony was offered, its reception was objected to, because the envelope was not sealed with the seal of the notary public before whom it was taken, and who had forwarded the same by mail. The Circuit Judge (Judge James Aldrich) admitted the testimony. Quite a number of witnesses were examined. After a verdict of the jury upon the two issues submitted to them, the Circuit Judge filed a decree in favor of the plaintiff on every issue. The three defendants, Jennings, Thomasson, and Austin, now appeal on six grounds, but as, in the view of this court, it will be only proper for us to pass on one, we will not reproduce any others:

"1. That his honor, the Circuit Judge, erred in admitting in evidence, against the objection of defendants, the testimony of Travers and Orgain taken before a notary public in Richmond, Virginia, the envelope containing the same not being sealed with the seal of the notary, as required by law."

The description of the facts connected with the envelope and its contents, as taken from the "Case" itself, is as follows: "On one side of the envelope was written the name and address of the clerk of the Circuit Court for Greenville County, with the names of the witnesses examined and of the notary, and the title of the cause. The envelope was securely sealed with mucilage or some other adhesive matter or substance. On the other side of the envelope there was written, or stamped, the word 'registered.' The envelope did not appear in any way to have been opened or tampered with."

The text of the third section of the act of 1883 (18 Stat., 373,) is as follows: "Every deposition taken under the provisions of the two preceding sections shall be retained by the officer taking it until he delivers it with his own hand into the court for which it is taken, or it shall, together with a certificate of the reasons, as aforesaid, of taking it, and of the notice, if any, to the adverse party, *be by such officer sealed up* and directed to such court and forwarded to such court either by mail or express, and *remain under his seal* until opened in court." (Italics ours.) This court has had occasion several times to pass upon the provisions of this act, but not upon the point now presented. *Featherstone* v. *Dagnell*, 29 S. C., 46; *Bulwinkle* v. *Cramer*, 30 *Id.*, 156; *Pelzer Manuf. Co.* v. *Sun Fire Insurance Company*, 36 *Id.*, 264; *Stoddard* v. *Hill*, 38 *Id.*, 386. In the case first cited, this language occurs: "The act of 1883 (18 Stat., 373,) confers special privileges upon certain prescribed conditions, and, according to the well settled rule, a party cannot avail himself of such privileges without complying with the conditions prescribed." To the same effect, in regard to a similar statute, has the United States Supreme Court expressed itself, as will be seen in *Bell* v. *Morrison*, 1 Peters, 355, and *Shutte* v. *Thompson*, 15 Wall., 161.

The respondent suggests that the sealing of the envelope, in which the deposition is enclosed, means the closing of the parts of the envelope so that they will firmly adhere together; it might be with sealing wax, or wafers, or any other tenaceous substance; that mucilage or gum having been used in this instance, so that the package appeared closed up until opened

in court, with no pretence that it was tampered with, and with no allegation of fraud, the depositions were properly admitted. It is quite true that the word "sealed" has acquired an enlarged meaning even when applied in the law. In the earlier times, wax upon which some impression was made was understood by the act of sealing. Gradually, however, it was allowed that some symbol adopted by the maker in lieu of the actual seal was allowed in law. This, it seems to us, ought to be the crucial test in such matters, namely, the adoption by the party who is required to seal of something in its stead.

Applying this test to the matter now under consideration, has the notary chosen any symbol or other substitution in lieu of an actual seal? The act of the legislature states that the officer before whom the deposition is made shall seal up the same, and also, that it shall remain under his seal until opened in court. Does not this statute require some act on the part of the notary by which he shall evince that the package sent to the court is his work? If he had used sealing wax and had stamped thereon his notarial seal, or had used sealing wax and had written his name across the same, or if he had written his name across the flap of the envelope after he had caused it to adhere to the body of the envelope, it seems to us that any one of these methods would have answered the demands of the statute in this respect. While in this particular case no harm might have resulted to the cause of justice if the depositions were declared legal, yet we ought always to remember that it is very dangerous for courts of justice to recognize methods that may lead to mischief, or that methods of doubtful form once recognized may carry concealed in their folds the seed of evil which may sap or destroy right and justice. Such being our views, we cannot hesitate as to our duty in the premises. Probably it is due to the parties to this cause to state that we have not announced our views upon the other grounds of appeal here presented, because we have thought, as a new trial must be ordered on the first ground if it alone had been presented, it were better that all the questions in the case should be considered anew without any expression of opinion from us thereon. It is the judgment of this court, that the judgment of the Cir-

cuit Court be reversed and that the cause be remanded to the
Circuit Court for a new trial.