### EASTERN PLUMBING SUPPLY CO., INC.
*vs.*
### J. SOLOMON

Court of Common Pleas   Hartford County   File No. 36973

MEMORANDUM FILED FEBRUARY 14, 1939.

*Victor F. DeNezzo*, of Hartford, for the Plaintiff.

*George J. Sherman*, of Hartford, for the Defendant.

MOLLOY, J.   The complaint in this action is in two counts. The first is to recover $197.22, balance due for goods sold to the defendant when he was in business for himself during the period from November, 1930, to August 13, 1931, inclusive. Upon these purchases payments were made by, and credits given to, the defendant during the period from January 24, 1931, to March 31, 1932.   This count is admitted by the de-

fendant, he making an oral offer of judgment for the amount due.

The second count is for a balance of $622.17 for goods sold and delivered to the defendant and Joe Falbowski during the period from November 22, 1928, to September 19, 1930, in-clusive. The defendant and Falbowski were partners during this period, doing business under the firm name of The Col-chester Plumbing and Heating Company. This partnership was dissolved in October, 1930. The last credit on this account prior to the dissolution of the partnership was September 15, 1930. Thereafter credits were given by the plaintiff under the following dates:

```
1931—February  26 . . . . . . . . . . . . . . . $50.00
         March  6  . . . . . . . . . . . . . . . .  36.29
         June  17  . . . . . . . . . . . . . . . .  50.00
1931—April  8  . . . . . . . . . . . . . . . . . .   4.50
1933—January  31  . . . . . . . . . . . . . . . 100.00
```

These credits represented cash or checks received by the plaintiff and allowances for goods returned. Falbowski is not a defendant to this action.

The defense urged by the defendant Solomon is that the part-nership existing between him and Falbowski when the items of the second count were incurred was dissolved, and notice there-of given to the plaintiff by Solomon, and no payments or acknowledgments, sufficient in law, of the indebtedness of the partnership have been made by him since the dissolution there-of, October, 1930, and that, therefore, recovery on this count is barred by the expiration of the statutory limit of six years.

The defendant further claimed in his answer that Falbowski paid the plaintiff a sum in full settlement of the plaintiff's claim against the partnership. This is not now pressed by him.

The action was brought under date of November 9, 1937. Unless an acknowledgment of the indebtedness by the defendant is deduced from the credits of $4.50 of April 8, 1932, and the payment of $100, January 31, 1933, the plaintiff's claim on the second count is barred.

Now, as to this, it is the claim of the defendant that the credits allowed by the plaintiff were for payments made by his former partner, Falbowski, concerning which he knew nothing,

he having turned over to Falbowski the business of the partnership when it was dissolved in October, 1930, and that under the law as laid down in *Broadway Bank and Trust Co. vs. Longley,* 116 Conn. 557, no liability now attaches to him.

The decision on this question, therefore, depends upon a correct analysis, in large part, of *Broadway Bank and Trust Co. vs. Longley, supra.* In that case the Supreme court referred to *Bound vs. Lathrop,* 4 Conn. 336; *Austin vs. Bostwick,* 9 id. 496; *Bissell vs. Adams,* 35 id. 299, and *Beardsley vs. Hall,* 36 id. 270. The rule was stated to be generally that a part payment or the acknowledgment of a debt by one co-partner made before the statute had run against the obligation in question tolled the statute as to the other partner. While acknowledging this rule, the Supreme Court refused to apply it in *Coit vs. Tracy,* 8 Conn. 268, where the acknowledgment of the debt was made by one partner some years after the dissolution of the partnership, and the interest of the partner making the acknowledgment was adverse to that of his former associate.

The Supreme Court went on to state, however, that its holding in the cited cases was at one time the common-law rule in England, and had been changed by statute there and in a number of jurisdictions in this country in which it had been adopted; that it had never been adopted in some states; that in other jurisdictions where once recognized it had been repudiated by judicial decisions; and that in others it had been either limited in its scope or followed with reluctance. The court then said (at p. 561) that "There can be no doubt that the rule does not represent the opinion prevailing today and that it is opposed by the great weight of authority. Note, 71 A.L.R. 375; 37 C.J. pp. 1131, 1163. The principle upon which it proceeds, that out of the community of interest represented by the joint obligation arises an agency on the part of each obligor to toll the statute as to the other by part payment or acknowledgment of the debt, clearly has little or no foundation in the actual intent of the parties or in the nature of their relationship. *Bell vs. Morrison,* 26 U.S. (1 Pet.) 351, 367 . . . ."

The Supreme Court continued: "The rule is undoubtely capable of working great hardship; one joint obligor, lulled into a sense of security by the running of the statute against the debt, may suddenly be confronted with an obligation which he had reason to believe had been barred many years before, but

which he finds has been kept alive by an acknowledgment or part payment made by his co-debtor, perhaps even without his knowledge. If the exigencies of this case required, we should feel compelled to consider carefully whether the rule announced in our earlier cases should, in the light of these considerations, now be followed." It is evident, therefore, that the Supreme Court is not quite so sure that it would hold in accordance with the early cases which I have cited in this memorandum, which do not represent "the opinion prevailing today" and which are "opposed by the great weight of authority."

Now, it cannot be said that acknowledgment of the debt or payment thereon by Falbowski was made "some years after the dissolution", nor that "the interest of the partner making the acknowledgment was adverse to that of his former associate" as in *Coit vs. Tracy, supra,* for it does not appear affirmatively that Falbowski was insolvent, unless it be inferred from the failure of the plaintiff to sue him along with the defendant. But, unless the community of interest is such as to give rise to an agency on Falbowski's part to toll the statute as to the retiring partner, the defendant, it would seem that the following facts come within the meaning of the discussion had by our Supreme Court in the *Broadway Bank* case.

The defendant testified—and there seems to be no contradiction of it—that when the partnership was dissolved, he notified a Mr. Meister, an officer of the plaintiff concern, to that effect; that shortly thereafter, November 19, 1930, through Meister, he established credit with, and began to purchase goods of, the plaintiff concern, and made payments on his individual account, as set forth in the first count; that he did not in any way subsequent to the dissolution acknowledge the debt of the partnership; that he did not know of the payments made by Falbowski after the dissolution of the partnership, and before this action was brought; and that when he and Falbowski orally dissolved the partnership, he, Solomon, left everything, accounts, tools and truck, to Falbowski, and walked out. He also testified, uncontradicted, that the assets were about sufficient to pay all debts, that he wanted to see Falbowski pay the debts and that he, Solomon, did not want to be any longer responsible, and that payment of them was left to Falbowski; that he, Solomon, stripped himself of all responsibility for them when he turned the business over to Falbowski; that the latter said he would take care of them; and that he, Solomon, in fact made no attempt to pay any of the debts. The plaintiff acknowledges

that the payments made personally by Solomon were on his personal account, but it contends that the payments made by Falbowski after the dissolution of the partnership were in law acknowledgments by Solomon sufficient to stop the running of the statute of limitations.

Emphasis was laid by the plaintiff on the payment of $100 January 31, 1933. Who actually gave this to the plaintiff, the latter was unable to say, except that it was the check of one Gottlieb, and represented a part payment by Gottlieb of an account he owed The Colchester Plumbing and Heating Company. The check was not delivered by Solomon. It was further testified by Solomon that Meister never mentioned the matter of the indebtedness to the plaintiff to him, and that he, Solomon, never spoke to Falbowski regarding the payments of the indebtedness after the dissolution, and never received any bills from the plaintiff thereafter.

The plaintiff, although doing business with the defendant for a part of the seven years following the dissolution of the partnership, suddenly confronts the defendant with an indebtedness which he had reason to believe was barred or had been taken care of by his former partner. For all during those seven years, the plaintiff did nothing to secure the debt from the defendant. On the contrary it was reasonable for the defendant to assume that the indebtedness was one the plaintiff was not looking to him to pay, for it knew the partnership had been dissolved, that it had received some payments from the remaining partner, and had made no attempt to get any of the indebtedness from the defendant. Indeed, it enabled the defendant to get new credit on his individual account under a changed first name. Certainly the payment of the $100 by Gottlieb cannot be held to be a tolling of the statute by Solomon, for he knew nothing of it, and it was a payment by a stranger, or certainly by one not authorized, so far as the evidence shows, by either Falbowski or Solomon. In the light of the *Broadway* case, therefore, the issues with respect to the second count are found for the defendant. Judgment is directed for the plaintiff to recover of the defendant on the first count $197.22, with interest from March 31, 1932, to date hereof, of $80.84, or a total of $278.06.